[Civ. No. 13787. Second Dist., Div. One. June 29, 1943.]

IMPERIAL MUTUAL LIFE INSURANCE COMPANY (a Corporation), Respondent, v. A. CAMINETTI, JR., as Insurance Commissioner, etc., Appellant.

Earl Warren, Attorney General, Robert W. Kenny, Attor-

ney General, John L. Nourse, Deputy Attorney General, and Peery Price, Special Counsel, for Appellant.

Chas. R. Thompson and Sherman & Sherman for Respondent.

WHITE, J.—This action was instituted by plaintiff for declaratory relief (Sec. 1060, Code Civ. Proc.) in connection with the interpretation placed by defendant Insurance Commissioner upon certain sections of the Insurance Code of this state insofar as such sections applied to the manner of doing business by plaintiff insurance company.

By its complaint and supplement thereto, plaintiff alleged that it has outstanding approximately 11,000 life contracts or policies, all of which were issued to and held by residents of the county of Los Angeles. That with the exception of approximately 790 policies, which were issued prior to October 26, 1936, when plaintiff became a mutual life and disability insurance company on the stipulated premium plan, with provision for assessments, under and by virtue of the provisions of chapter 9, part 2, division 2 of the Insurance Code, as provided by sections 10739 to 10744 inclusive of said code. Practically all plaintiff's outstanding policies are what are commonly known as "burial" policies, or "funeral service" policies, providing in substance that upon the death of the insured the plaintiff will procure and pay for a funeral, consisting of various designated services and items for a designated amount by a designated funeral director named in the policy. It was further alleged that of such outstanding "funeral service" policies, approximately 600 are single premium policies, that is, policies paid for by one premium at the time of issuance, and that approximately 9,500 are premium paying policies—that is policies paid for by periodic premiums from time to time during the lifetime of the assured, or for a designated number of years. Plaintiff further alleged that under the provisions of sections 10870 and 10875 of the Insurance Code, it had calculated its reserves in accordance therewith and in the regular, usual and acceptable way of calculating reserves on life contracts by all life insurance companies. It is then alleged that starting in 1937 plaintiff company annually furnished and filed with defendant Insurance Commissioner reports, duly and properly executed, showing in detail the modified reserve calculation, and also

filed statements reflecting its condition and affairs. It is then alleged that about November, 1940, defendant commissioner for the first time "intimated to plaintiff that there might be a contention advanced by him that he would adopt another method of calculating modified reserves and another interpretation of section 10870 than that used by plaintiff." It is then further alleged that defendant commissioner did "on or about the 22nd day of May, 1941, adopt the contention and still contends that plaintiff's said method under its interpretation of section 10870 is incorrect." Plaintiff's pleading then alleged "That there has arisen and continues to exist, an actual and bona fide dispute and controversy between plaintiff and defendant, with respect to the modified reserve and assessment provisions of plaintiff's outstanding 'funeral service' policies and respecting the interpretation of sections 10870 and 10875 of the Insurance Code and respecting the proper method of calculating modified reserves on such business and respecting plaintiff's reserve liability on such business as hereinabove set forth and further, in that defendant contends that plaintiff cannot modify in any way the reserves on its said single premium policies, whereas plaintiff contends that while it has not done so in the past (it has carried full reserves thereon) it may, in accordance with said reserve provisions of such policies and section 10870, for the purpose of a test of solvency, modify reserves on such business, and further in that defendant contends that by applying his· method and interpretation of section 10870, there is a deficiency in plaintiff's reserves and that therefore, plaintiff is insolvent and defendant can therefore seize and take over plaintiff, its business and assets, whereas plaintiff contends that there is no deficiency in its reserves and that on the contrary, it has a substantial surplus and is not insolvent, and that if it should be held that defendant's method of calculating modified reserves and his interpretation of section 10870 are correct and that also plaintiff cannot modify the reserves under its said single premium policies, defendant cannot seize and take over plaintiff, its business and assets, but that plaintiff is entitled, and should be given an opportunity, to collect 'additional premiums or assessments' from its policy holders for the purpose of repairing such deficiency, or charging same, if not paid, as a lien against the reserve on such policies, which would eliminate any such deficiency, as specifically provided

for in such policies and by the provisions of section 10875 of the Insurance Code."

Plaintiff prayed for declaratory relief and a judgment establishing and decreeing:

"(a) The rights, duties and obligations of the parties respecting the reserves under the provisions of plaintiff's outstanding policies and section 10870 of the Insurance Code;

"(b) That plaintiff's method of calculating modified reserves on its outstanding policies is correct and lawful under section 10870 of the Insurance Code;

"(c) That plaintiff may continue to so calculate its modified reserves in such manner;

"(d) That plaintiff is so modifying its reserves in such manner need not reduce in any way its due and deferred premiums;

"(e) That plaintiff, if it so desires, may also modify the reserves on its outstanding single premium policies, in accordance with their provisions and section 10870 of the Insurance Code;

"(f) That defendant's method of calculating modified reserves under plaintiff's outstanding policies is incorrect and unlawful;

"(g) That plaintiff does not have a deficiency in its reserves and is not insolvent, or if plaintiff does have a deficiency in such reserves,

"(h) That plaintiff has the right and be given sufficient time and opportunity to call for and collect additional premiums or assessments from its policyholders, or charge same to such reserves, to repair such deficiency, in accordance with the policy provisions and section 10875 of the Insurance Code."

Following the filing of defendant's answer, issue was joined and the cause proceeded to trial before the court sitting without a jury. This action, together with the proceeding instituted by the commissioner against defendant company, this day decided (*ante,* p. 476 [139 P.2d 681]), and the mandate proceeding filed by the insurance company against the commissioner, also this day decided (*ante,* p. 494 [139 P.2d 693]), was tried pursuant to stipulation upon the record made in the so-called "principal" proceeding entitled *Caminetti* v. *Imperial Mutual Life Insurance Co.* (*ante,* p. 476 [139 P.2d 681]).

After trial the court made findings in favor of plaintiff and

entered judgment decreeing that in the conduct of its business the methods used by plaintiff complied with its policy provisions and with sections 10870, 10875, 10895 and 915 of the Insurance Code. From such judgment defendant insurance commissioner prosecutes this appeal.

Appellant commissioner contends that the trial court was without jurisdiction to award declaratory relief to respondent for the reason that the latter did not exhaust its administrative remedies before seeking judicial intervention. In this claim, appellant must be sustained. The complaint and supplement thereto filed herein alleged "That defendant did, on or about the 22nd day of May, 1941, adopt the contentions and still contends that plaintiff's said method under its interpretation of section 10870 is incorrect . . ."; and that this ruling was in conflict with law. Assuming the truth of these allegations, respondent had the right to appeal to the Attorney General of California, as authorized by section 12923 of the Insurance Code. That section provides that when a controversy arises between the Insurance Commissioner and one affected by any order, ruling, decision or act of the commissioner, and is submitted to the attorney general, the opinion of the latter in response to such submission shall govern and control the commissioner in respect to the matter so submitted.

Courts are without power to interfere in the intermediate stages of an administrative proceeding (*Abelleira* v. *District Court of Appeal*, 17 Cal.2d 280, 291, 301 [109 P.2d 942, 132 A.L.R. 715]). The power reposed in the courts by section 1060 of the Code of Civil Procedure to make a declaratory decree does not confer upon a court of equity authority, by such a decree, to stop or interfere with administrative proceedings, where it would not, under recognized and settled principles, have interfered with or stopped such administrative proceedings under its power to enjoin (*Louis Eckert Brewing Co.* v. *Unemployment Reserves Commission*, 47 Cal.App.2d 844, 848 [119 P.2d 227]; *Bradley Lumber Co. of Arkansas* v. *National Labor Relations Board*, 84 F.2d 97, 100). In *Hoyt* v. *Board of Civil Service Commissioners of the City of Los Angeles*, 21 Cal.2d 399 [132 P.2d 804], it was specifically held that the statute authorizing suits for declaratory relief does not enlarge the jurisdiction of courts over parties and subject-matter. Manifestly, in the case at bar the administrative proceeding affecting respondent was not complete; the administrative remedies available to respondent were not

exhausted, and the declaratory relief action with which we are here concerned was premature.

The judgment is reversed.

York, P. J., and Doran, J., concurred.