[No. B091312. Second Dist., Div. Seven. July 31, 1996.]

VENICE TOWN COUNCIL, INC., et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

1548

1550

COUNSEL

Western Center on Law & Poverty, John E. Huerta, Richard A. Rothschild, Robert N. Jacobs and Dennis Rockway for Plaintiffs and Appellants.

James K. Hahn, City Attorney, Claudia McGee Henry and Anthony Saul Alperin, Assistant City Attorneys, and Claudia Culling, Deputy City Attorney, for Defendants and Respondents.

OPINION

JOHNSON, J.—This case raises the issue whether the Mello act (Gov. Code, §§ 65590 & 65590.1) imposes a mandatory duty on local governments to require developers to replace residential units, or pay an in-lieu fee, whenever they demolish or convert dwelling units occupied by low- or moderate-income persons in the coastal zone. Appellants, the Venice Town Council, Inc., the Barton-Hill Neighborhood Association and Carol Berman, a low-income tenant who resides in Venice, contend the Mello act imposes such a duty. Respondent, the City of Los Angeles (City), argues the Mello act imposes no mandatory duties on local governments. It claims the Mello act only requires replacement dwelling units when the City in its discretion determines replacement of low- or moderate-income housing is "feasible."

We conclude the City's interpretation of its responsibilities under the Mello act is erroneous. The plain language of the statute imposes a mandatory duty on the City in certain circumstances to require replacement housing for low- or moderate-income persons or families where units occupied by qualifying persons are converted or destroyed. We further conclude the City has no discretion to allow a developer to escape the requirement of providing affordable replacement units whenever the City permits a non-coastal dependent commercial structure to replace existing affordable residential units. Because the trial court based its ruling on the City's erroneous interpretation of its duties under the Mello act, we reverse the judgment of dismissal with directions to overrule the demurrer.

### FACTS AND PROCEEDINGS BELOW

In 1981 the Legislature enacted Government Code section 65590.[1] This provision is known as the Mello act and its purpose is to preserve residential housing units occupied by low- or moderate-income persons or families in

---

[1]All further statutory references are to the Government Code unless otherwise indicated.

the coastal zone. The Mello act applies to condominium conversions, demolitions, new construction, conversions from residential to nonresidential uses and new residential developments in the coastal zone.

Section 65590, subdivision (a) specifies all local governments having coastal zones must comply with the Mello act. This subdivision provides "[e]ach respective local government shall comply with the requirements of this section in that portion of its jurisdiction which is located within the coastal zone."

Subdivision (b) of section 65590 is the provision which imposes a mandatory duty on local governments to require replacement housing as a condition of granting a permit to demolish or convert housing units which are occupied by low or moderate income persons or families. Subdivision (b) provides "[t]he conversion or demolition of existing residential dwelling units occupied by persons and families of low or moderate income, . . . , *shall not be authorized unless provision has been made for the replacement of those dwelling units* with units for persons and families of low or moderate income." (Italics added.) The replacement units may be erected either on the same site, elsewhere within the coastal zone or within three miles of the coastal zone, whichever location proves most feasible. (§ 65590, subd. (b).)

There are certain narrow circumstances where the mandatory requirement for replacement of converted or demolished affordable housing units is subject to a finding replacement of the affordable housing is "feasible." The types of conversions or demolitions which may be reviewed for feasibility of replacement with affordable housing are (1) single-family dwellings, duplexes, or 10 or fewer units of multiple residential structures (§ 65590, subd. (b)(1)); (2) residential units replaced by coastal dependent or coastal related uses (§ 65590, subd. (b)(2));[2] (3) converted or demolished residential units in a jurisdiction with less than 50 acres of available privately owned vacant land in the coastal zone (§ 65590, subd. (b)(3)); (4) payment of a fee in lieu of affordable replacement housing, provided the local government has a program to ensure the fees will be used to build replacement units in, or within three miles of, the coastal zone (§ 65590, subd. (b)(4)); and (5) residential units which have been declared a public nuisance (§ 65590, subd. (b)(4).)

Even if one of these special circumstances applies, however, and the local government finds the further fact that it is feasible for the developer to

---

[2]"Coastal dependent" is defined by Public Resources Code section 30101 as "any development or use which requires a site on, or adjacent to, the sea *to be able to function at all*." (Italics added.)

replace some or all of the converted or demolished affordable housing units, "replacement dwelling units *shall* be required." (§ 65590, subd. (b), italics added.)[3]

---

[3]The full text of section 65590, subdivision (b) provides: "(b) The conversion or demolition of existing residential dwelling units occupied by persons and families of low or moderate income, as defined in Section 50093 of the Health and Safety Code, shall not be authorized unless provision has been made for the replacement of those dwelling units with units for persons and families of low or moderate income. Replacement dwelling units shall be located within the same city or county as the dwelling units proposed to be converted or demolished. The replacement dwelling units shall be located on the site of the converted or demolished structure or elsewhere within the coastal zone if feasible, or, if location on the site or elsewhere within the coastal zone is not feasible, they shall be located within three miles of the coastal zone. The replacement dwelling units shall be provided and available for use within three years from the date upon which work commenced on the conversion or demolition of the residential dwelling unit. In the event that an existing residential dwelling unit is occupied by more than one person or family, the provisions of this subdivision shall apply if at least one such person or family, excluding any dependents thereof, is of low or moderate income.

"For purposes of this subdivision, a residential dwelling unit shall be deemed occupied by a person or family of low or moderate income if the person or family was evicted from that dwelling unit within one year prior to the filing of an application to convert or demolish the unit and if the eviction was for the purpose of avoiding the requirements of this subdivision. If a substantial number of persons or families of low or moderate income were evicted from a single residential development within one year prior to the filing of an application to convert or demolish that structure, the evictions shall be presumed to have been for the purpose of avoiding the requirements of this subdivision and the applicant for the conversion or demolition shall bear the burden of proving that the evictions were not for the purpose of avoiding the requirements of this subdivision.

"The requirements of this subdivision for replacement dwelling units shall not apply to the following types of conversion or demolition unless the local government determines that replacement of all or any portion of the converted or demolished dwelling units is feasible, in which event replacement dwelling units shall be required:

"(1) The conversion or demolition of a residential structure which contains less than three dwelling units, or, in the event that a proposed conversion or demolition involves more than one residential structure, the conversion or demolition of 10 or fewer dwelling units.

"(2) The conversion or demolition of a residential structure for purposes of a nonresidential use which is either 'coastal dependent,' as defined in Section 30101 of the Public Resources Code, or 'coastal related,' as defined in Section 30101.3 of the Public Resources Code. However, the coastal-dependent or coastal-related use shall be consistent with the provisions of the land use plan portion of the local government's local coastal program which has been certified as provided in Section 30512 of the Public Resources Code. Examples of coastal-dependent or coastal-related uses include, but are not limited to, visitor-serving commercial or recreational facilities, coastal-dependent industry, or boating or harbor facilities.

"(3) The conversion or demolition of a residential structure located within the jurisdiction of a local government which has within the area encompassing the coastal zone, and three miles inland therefrom, less than 50 acres, in aggregate, of land which is vacant, privately owned and available for residential use.

"(4) The conversion or demolition of a residential structure located within the jurisdiction of a local government which has established a procedure under which an applicant for conversion or demolition will pay an in-lieu fee into a program, the various provisions of

Subdivision (c) of section 65590 also imposes a mandatory duty on local governments to require replacement housing when they determine *any* residential structure is no longer feasible in a certain location and permit a noncoastal dependent use to be built in its place. This subdivision provides: "The conversion or demolition of *any residential structure* for purposes of a nonresidential use which is not 'coastal dependent' . . . shall not be authorized unless the local government has first determined that a residential use is no longer feasible in that location. If a local government makes this determination and authorizes the conversion or demolition of the residential structure, *it shall require* replacement of any dwelling units occupied by persons and families of low or moderate income pursuant to the applicable provisions of subdivision (b)." (Italics added.)

Section 65590, subdivision (d) pertains to new housing developments. With new housing developments residential units for low or moderate income persons are required if the local government determines such units are feasible within the new development, within the coastal zone or within three miles of the coastal zone.[4]

Section 65590, subdivision (g)(3) defines the term "feasible" as "capable of being accomplished in a successful manner within a reasonable period of

---

which, in aggregate, will result in the replacement of the number of dwelling units which would otherwise have been required by this subdivision. As otherwise required by this subdivision, the replacement units shall, (i) be located within the coastal zone if feasible, or, if location within the coastal zone is not feasible, shall be located within three miles of the coastal zone, and (ii) shall be provided and available for use within three years from the date upon which work commenced on the conversion or demolition.

"The requirements of this subdivision for replacement dwelling units shall not apply to the demolition of any residential structure which has been declared to be a public nuisance under the provisions of Division 13 (commencing with Section 17000) of the Health and Safety Code, or any local ordinance enacted pursuant to those provisions.

"For purposes of this subdivision, no building, which conforms to the standards which were applicable at the time the building was constructed and which does not constitute a substandard building, as provided in Section 17920.3 of the Health and Safety Code, shall be deemed to be a public nuisance solely because the building does not conform to one or more of the current provisions of the Uniform Building Code as adopted within the jurisdiction for new construction."

[4]Section 65590, subdivision (d) provides: "New housing developments constructed within the coastal zone shall, where feasible, provide housing units for persons and families of low or moderate income, as defined in Section 50093 of the Health and Safety Code. Where it is not feasible to provide these housing units in a proposed new housing development, the local government shall require the developer to provide such housing, if feasible to do so, at another location within the same city or county, either within the coastal zone or within three miles thereof. In order to assist in providing new housing units, each local government shall offer density bonuses or other incentives, including, but not limited to, modification of zoning and subdivision requirements, accelerated processing of required applications, and the waiver of appropriate fees."

time, taking into account economic, environmental, social, and technical factors." Any "feasibility" determination may be reviewed by administrative mandate. (§ 65590, subd. (e).)

The Legislature in section 65590, subdivision (h)(3) specified the Mello Act was not intended, nor should be construed, as requiring any local government to adopt individual ordinances or programs to implement the various provisions of the Mello act.[5]

In 1982 the Los Angeles City Council adopted a formal policy to implement the Mello act. It directed the City's planning department to require, on a one-for-one basis, the replacement of any rental units occupied by low or moderate income persons converted or demolished in the coastal zone. In addition, the city council directed that as an interim measure, the planning department was to use interpretative guidelines the coastal commission established for new construction as its guideline when determining the feasibility of requiring low or moderate income housing as a condition of granting permits for new housing construction.

In February 1993, the City approved an application by owners of an apartment building at 615 Ocean Front Walk in Venice to convert three ground floor residential units of the apartment building to commercial uses. The City granted the application based on its finding residential use of the ground floor units abutting the Venice board walk was no longer feasible at that location. The City also found the new retail stores were "coastal dependent." (See fn. 2, *ante.*) Several persons challenged the City's approval permitting demolition of the existing residential units without making an in-lieu fee or replacement of those units a condition of approval. The City's approval of this permit apparently triggered the present litigation.

Appellants filed an action against the City and the owners of 615 Ocean Front Walk for traditional writ of mandate (Code Civ. Proc., § 1085), administrative mandate (Code Civ. Proc., § 1094.5), injunctive and declaratory relief. The City twice demurred to the complaint, arguing the remedies appellants sought were unavailable. The trial court sustained the City's demurrer to appellants' first amended complaint with leave to amend. In its

---

[5]Section 65590, subdivision (h)(3) specifies "compliance with the requirements of this section is not intended and shall not be construed as . . . [¶] [e]xcept as otherwise specifically required by this section, a requirement that a local government adopt individual ordinances or programs in order to implement the requirements of this section."

order the trial court found appellants had "not alleged failure to perform [a] mandatory duty."[6]

The City demurred to appellants' second amended complaint for injunctive and declaratory relief and traditional mandate, claiming the Mello Act imposed no mandatory duties on the City. The City argued each of its determinations under the Mello act required a finding of "feasibility." It claimed the decision whether a certain project is "feasible" is necessarily discretionary because the determination rests on a case by case factual analysis. Therefore, the City argued appellants' complaint stated no claim for relief because its actions under the Mello act are only reviewable in an action for administrative mandate. However, the City claimed the statute of limitations for administrative review barred all but five of appellants' claims, and with regard to those five, appellants had failed to exhaust their administrative remedies prior to filing suit. Finally, the City argued appellants lacked standing to enforce the Mello act.

The trial court sustained the City's demurrer without leave to amend on the "grounds stated in the moving papers." Appellants appeal from the subsequent judgment of dismissal.

## DISCUSSION

### I. *Standard of Review.*

For purposes of this appeal we accept as true the properly pled factual allegations of the complaint. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Furthermore, the allegations of the complaint must be read in the light most favorable to the plaintiff and liberally construed with a view to attaining substantial justice among the parties. (Code Civ. Proc., § 452; *King* v. *Central Bank* (1977) 18 Cal.3d 840, 843 [135 Cal.Rptr. 771, 558 P.2d 857].) With these considerations in mind, we review the complaint de novo to determine whether it alleges facts sufficient to state a right to relief under any legal theory. (*Wilson* v. *Houston Funeral Home* (1996) 42 Cal.App.4th 1124, 1131-1132 [50 Cal.Rptr.2d 169]; 5 Witkin Cal. Procedure (3d ed. 1985) Pleading, § 942, p. 377, and cases cited.)

---

[6]Appellants had originally filed an additional claim for administrative mandamus regarding the property located at 615 Ocean Front Walk in Venice. Appellants dismissed the claim against the owner and real party in interest after filing the first amended complaint because the real party in interest agreed to replace the units at 615 Ocean Front Walk with affordable housing units at another location within the coastal zone.

II. *Appellants' Complaint States Causes of Action for Traditional Mandate, Declaratory Judgment and Injunctive Relief.*

 A. *The Complaint Alleges the City Has a Mandatory, Ministerial Duty Enforceable Through Writ of Mandate.*

 ■ "A writ of mandate will lie to 'compel the performance of an act which the law specifically enjoins, as a duty resulting from an office, trust, or station' (Code. Civ. Proc., § 1085) 'upon the verified petition of the party beneficially interested,' in cases 'where there is not a plain, speedy, and adequate remedy, in the ordinary course of law.' (Code Civ. Proc., § 1086.) The writ will issue against a county, city or other public body or against a public officer. (*Housing Authority* v. *City of L. A.* (1952) 38 Cal.2d 853, 869-871 [243 P.2d 515], cert. den. (1952) 344 U.S. 836 [97 L.Ed. 651, 73 S.Ct. 46]; *Hawthorn* v. *City of Beverly Hills* (1952) 111 Cal.App.2d 723, 731 [245 P.2d 352].) However, the writ will not lie to control discretion conferred upon a public officer or agency. (*Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 315 [144 P.2d 4]; *Faulkner* v. *Cal. Toll Bridge Authority* (1953) 40 Cal.2d 317, 326 [253 P.2d 659].) Two basic requirements are essential to the issuance of the writ: (1) A clear, present and usually ministerial duty upon the part of the respondent (*Faulkner* v. *Cal. Toll Bridge Authority, supra*; *Sherman* v. *Quinn* (1948) 31 Cal.2d 661, 664 [192 P.2d 17]; *Browning* v. *Dow* (1923) 60 Cal.App. 680, 682 [213 P. 707]); and (2) a clear, present and beneficial right in the petitioner to the performance of that duty (*Parker* v. *Bowron* (1953) 40 Cal.2d 344, 351 [254 P.2d 6]). . . ." (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 490-491 [96 Cal.Rptr. 553, 487 P.2d 1193], fn. omitted; see also 8 Witkin, Cal. Procedure, *supra*, Extraordinary Writs, § 65, pp. 702-704; Cal. Civil Writs Practice (Cont.Ed.Bar 2d ed. 1987) §§ 5.1-5.3, pp. 147-153.)

 ■ In this case appellants' complaint alleges the City has a clear duty imposed by law by section 65590. As noted, section 65590, subdivision (b) mandates the City require replacement of low- or moderate-income housing as a condition of approval of their conversion or demolition. This provision creates a mandatory duty to require replacement housing, or an in-lieu fee, unless the City makes express factual determinations the project falls within specific statutory categories, which in turn still mandate replacement unless the City makes an express factual determination replacement housing is not feasible.

The complaint alleges the City has both failed to make the necessary factual determinations, and to require replacement housing in cases which do

not implicate any of the special factual circumstances. Paragraph 18 of the complaint alleges "Government Code § 65590 (b) prohibits defendant CITY from authorizing the conversion or demolition of existing residential dwelling units occupied by persons and families of low or moderate income, unless provision has been made for the replacement of those dwelling units with units for persons and families of low or moderate income. Said duty is mandatory and not subject to the exercise of discretion. Defendant CITY's planning department has failed to enforce Section 65590 (b), and has enacted a de facto policy which violates the statute by requiring replacement of affordable housing, only if the cost of replacing the housing is feasible—a condition not required by the statute." Paragraphs 19 through 23 of the complaint list numerous specific examples of locations in the coastal zone for which the City has allegedly issued permits for the conversion or demolition of affordable housing without complying with section 65590, subdivision (b).[7] Specifically, appellants alleged the City had authorized the demolition of at least 271 affordable housing units and only required 5 to be replaced.

Paragraph 13 of the complaint alleges whenever a developer seeks a permit to demolish or convert existing residential units in the coastal zone the City has a mandatory, ministerial duty to make certain factual findings, specifically, (1) whether the units are, or have been within the past year, occupied by low- or moderate-income persons or families; (2) whether a proposed nonresidential use is coastal dependent or related; and, (3) whether the residential use is still feasible at that location. Paragraph 24 of the complaint details numerous circumstances in which appellants allege the City issued permits to demolish existing housing units without making the threshold determination whether the residences were occupied by low- or moderate-income persons.

As noted, section 65590, subdivision (c) mandates the City to require replacement housing any time existing residential units occupied by low- or moderate-income persons are replaced by noncoastal dependent commercial uses. Contrary to the City's argument, this subdivision permits the City no discretion to determine whether replacement units are feasible in this circumstance. If a noncoastal dependent commercial use replaces residential units occupied by low- or moderate-income persons or families, replacement

---

[7]As noted, this appeal is from a judgment of dismissal after the trial court sustained the City's demurrer without leave to amend. At this stage the City admits the material factual allegations of the complaint. (*Californians for Native Salmon etc. Assn.* v. *Department of Forestry* (1990) 221 Cal.App.3d 1419, 1426 [271 Cal.Rptr. 270].) Consequently, this court need not be concerned whether each of the alleged violations of the Mello Act can withstand a motion for summary judgment or be proved at trial. (*Id.* at p. 1428.)

of those affordable housing units are required, either within the coastal zone or within three miles of the coastal zone. Thus, contrary to the City's apparent policies, argument in the trial court and in this court, when dwelling units occupied by low- or moderate-income persons or families are replaced by noncoastal dependent commercial uses, replacement of these units or payment of an in-lieu fee is mandatory and is not dependent on a finding replacement is feasible.[8]

Paragraphs 25 through 26 of the complaint allege the City has issued demolition permits in violation of section 65590, subdivision (c) by failing to make the necessary findings whether the proposed commercial use is coastal dependent, or whether the existing residential structure is still a feasible use in that location. The complaint gives nine examples of locations in the Venice coastal zone where the City issued permits allegedly in violation of section 65590, subdivision (c).

Section 65590, subdivision (d) pertains to new housing developments in the coastal zone. As noted, this section specifies new developments "shall" include units for low- or moderate-income persons and families where feasible. Appellant's complaint alleges the City fails to determine whether requiring affordable housing for a particular project is feasible. The complaint lists several new construction projects in the coastal zone for which the City allegedly failed to make the necessary findings prior to issuing permits.

In addition, the complaint alleges the City has a policy of automatically exempting any developer who challenges the condition when the City does require affordable housing to be included in a new housing development. Paragraph 16 of the complaint alleges "[t]he de facto policy of the defendant CITY is to grant all requests for exemption from the low/moderate-income requirements imposed by the Mello Act on new construction in the Coastal Zone. Attached hereto as Exhibit 'B' and incorporated by reference . . . is a memorandum from the Chair of the Board of Zoning Appeals to the Mayor of defendant CITY, dated August 1, 1990, entitled ' " 'Mello Bill' " Low/ Moderate Income Housing Policy' which admits and delineates the defendant CITY's policy of non-enforcement."

---

[8]The only types of conversions or demolitions which may be reviewed for feasibilty of replacement with affordable housing or payment of an in-lieu fee under this subsection would be the conversion or demolition of single family residences or duplexes (§ 65590, subd. (b)(1)), units declared to be public nuisances (§ 65590, subd. (b)(4)), units in a jurisdiction with less than 50 acres of vacant, privately owned and available land (§ 65590, subd. (b)(3)) or replacement with a coastal-related use (§ 65590, subd. (b)(2).)

The memorandum from the chair of the board of zoning appeals complains the requirements of the Mello act are too vague, subjective, speculative and subject to abuse. The letter informs the mayor that until specific guidelines or procedures are adopted to implement the Mello act requirements the zoning appeals board "unanimously adopted a policy to approve, absent clear and convincing evidence to the contrary, all applicant appeals which request exemption from the Mello Bill low/moderate-income housing requirements relative to parcel maps."

In sum, a liberal construction of the complaint adequately alleges the Mello act imposes on the City the mandatory, ministerial duties to, at a minimum, (1) make the threshold factual determination whether proposed residential units slated for demolition or conversion in the coastal zone are, or in the past year have been, occupied by low- or moderate-income persons or families; (2) and, if so, to require an in lieu fee, or replacement of affordable housing units at that location, within the coastal zone or within three miles of the coastal zone; or (3) to make the requisite factual findings a proposed commercial use is coastal related or dependent; or (4) if not coastal dependent, to require replacement housing for low- or moderate-income persons and families in, or within three miles of, the coastal zone; and, (5) to make the additional factual determinations whether a residential unit slated for demolition is still feasible at the location, whether affordable housing units are feasible for a given new housing development, and the other express determinations required by statute prior to the issuance of conversion, demolition or construction permits within the coastal zone.

Accordingly, the trial court erred in sustaining the City's demurrer without leave to amend on the ground the complaint failed to allege the Mello act imposed mandatory duties on the City.

The City attempts to avoid this conclusion. It points to certain provisions in the prayer of the complaint and argues the Mello act does not impose a duty to adopt procedures or guidelines to implement the Mello act, nor does the act require the City to require deed restrictions in perpetuity or to establish a monitoring program to ensure occupancy by only low- or moderate-income persons in replacement housing.

We agree the Legislature in section 65590, subdivision (h)(3) clarified this section was not to be construed as requiring a local government to adopt any ordinances or programs to implement the provisions of the Mello act. We agree certain aspects of the prayer of the complaint conflict with this provision, or improperly impinge on the City's exercise of discretion in

selecting specific procedures or guidelines to enforce the Mello act. However, a demurrer tests the sufficiency of the factual allegations of the complaint rather than the relief suggested in the prayer of the complaint. (*Siciliano* v. *Fireman's Fund Ins. Co.* (1976) 62 Cal.App.3d 745, 751 [133 Cal.Rptr. 376]; *Grieves* v. *Superior Court* (1984) 157 Cal.App.3d 159, 166, fn. 9 [203 Cal.Rptr. 556] [the prayer of a complaint is not subject to demurrer]; see also *Taylor* v. *Superior Court* (1979) 24 Cal.3d 890, 893 [157 Cal.Rptr. 693, 598 P.2d 854] [the issues are framed by the allegations of the complaint]; 5 Witkin, Cal. Procedure, *supra*, Pleading, § 907, pp. 345-346, and cases cited.) On remand, the prayer of the complaint may be amended to conform with the statutory requirements and the statements expressed in this opinion if deemed desirable by the parties or trial court.

Next, the City contends the City's enforcement of the Mello act does not violate the act. It argues the factual allegations of the complaint are not borne out by the official records of the City. This argument misses the mark. This appeal is not from an order granting summary judgment, or from a judgment after trial. As noted, on appeal from an order sustaining a demurrer without leave to amend, the factual allegations of the complaint are deemed true by the City's demurrer. (See, e.g., *Californians for Native Salmon etc. Assn.* v. *Department of Forestry*, *supra*, 221 Cal.App.3d 1419, 1428.)

Finally, the City contends appellants' proper remedy is to seek review of the City's enforcement policies under the Mello act through administrative mandate. It argues each project must be reviewed on a case-by-case basis and for this reason each decision should be reviewed on its own merits through administrative proceedings. In addition, the City argues the factual determinations such as "feasibility," "coastal related," or "coastal dependent" are fact based and are therefore necessarily discretionary.

We agree each application for a permit requires certain factual determinations. We also agree the question of "feasibility" requires the exercise of discretion. However, we disagree with the City that each aspect of the fact finding process is synonymous with a discretionary determination. A truly discretionary decision requires the exercise of judgment in resolving a particular issue by balancing various factors and selecting among various approaches to the same problem. On the other hand, many factual determinations are based strictly on objective data. For example the factual determination whether residential units are occupied by low- or moderate-income persons or families is based on fixed mathematical criteria. There is no discretion to be exercised in making this mathematical comparison. (See,

e.g., *Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 344 [124 Cal.Rptr. 513, 540 P.2d 609] [the ministerial act of computing and paying salaries admits of no discretion].) As noted, the complaint alleges the City has in numerous instances failed to make these preliminary and ministerial factual determinations.

We conclude appellants' complaint alleges several mandatory, ministerial duties under the Mello Act which may be enforced by writ of mandate.[9]

B. *Appellants Have Standing to Seek the Relief Sought in the Complaint.*

The City urges several reasons why appellants lack standing to seek a writ of mandate. It argues appellants have no taxpayer standing under Code of Civil Procedure section 526a because they do not seek to prevent an illegal expenditure or waste of public funds. The City also claims appellants lack any beneficial interest in the subject matter of the suit to warrant the granting of a writ. The City points out appellants do not allege they or their members are low- or moderate-income tenants who were either displaced due to the City's failure to comply with its responsibilities under the Mello act, or had a right to live-in units which would have been created but for the City's failure to perform its duties under the Mello act. Finally, the City contends appellants do not fall within the public duty exception to acquire standing to seek a writ of mandate because it claims appellants can allege no mandatory duty which it failed to perform.

We have determined the complaint adequately alleged several mandatory duties under the Mello act which the City allegedly failed to perform. Accordingly, we reject the City's latter contention as without merit.

We also find it unnecessary to reach the question whether appellants have standing to seek an injunction or declaratory relief under Code of Civil Procedure section 526a as taxpayers because there is an independent basis for permitting them to proceed.

The ultimate relief sought in this action includes a traditional writ of mandate compelling the City to require replacement housing somewhere

---

[9]In this case an injunction would be identical in purpose and function as a writ of mandate. (See, e.g., *Common Cause* v. *Board of Supervisors* (1989) 49 Cal.3d 432, 442 [261 Cal.Rptr. 574, 777 P.2d 610]; *Miguel* v. *McCarl* (1934) 291 U.S. 442, 452 [78 L.Ed. 901, 907, 54 S.Ct. 465]; see also authorities cited in 42 Am.Jur.2d, Injunctions, § 19, p. 750, § 43, p. 783 and 43 C.J.S. (rev. 1978) Injunctions, § 3, pp. 742-743.) Consequently, to the extent traditional mandate constitutes a proper remedy, the remedy of injunctive relief is also proper.

within or without the coastal zone whenever units occupied by low- or moderate-income persons or families are converted or demolished. Ordinarily a writ of mandate will be issued only to persons who are "beneficially interested." (Code Civ. Proc., § 1086.) However, our Supreme Court has recognized an exception to this general rule. " ' "[W]here the question is one of public right and the object of the mandamus is to procure the enforcement of a public duty, the relator need not show that he has any legal or special interest in the result, since it is sufficient that he is interested as a citizen in having the laws executed and the duty in question enforced." ' [Citation.] The exception promotes the policy of guaranteeing citizens the opportunity to ensure that no governmental body impairs or defeats the purpose of legislation establishing a public right. . . ." (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 144 [172 Cal.Rptr. 206, 624 P.2d 256]; see also *Common Cause* v. *Board of Supervisors, supra*, 49 Cal.3d 432, 439; *McKeon* v. *Hastings College of the Law* (1986) 185 Cal.App.3d 877, 892-893 [230 Cal.Rptr. 176]; 8 Witkin, Cal. Procedure, *supra*, Extraordinary Writs, § 74, pp. 713-714 and cases cited; Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1995) § 15:16, pp. 15-9 to 15-10.)

The Legislature has recognized there is a severe shortage of affordable housing throughout California, especially for persons of low and moderate income. (See, e.g., §§ 65009, subd. (a), 65580, subd. (c), 65589.5, subd. (a)(1) and 65913, subd. (a).)[10] The issue in this case involves an important public right to preserve affordable housing in the coastal zone. Appellants, who are interested as citizens in having the laws and the duty in question enforced, have standing to seek its vindication. As such, appellants also have standing to seek a preliminary injunction to enforce the requirements of the Mello act if necessary. ▆ "The purpose of a standing requirement is to ensure that the courts will decide only actual controversies between parties with a sufficient interest in the subject matter of the dispute to press their case with vigor. [Citations.] This purpose is met when, as here, plaintiffs possess standing to have the underlying controversy adjudicated and the desired relief granted after a trial on the merits; no greater interest is

---

[10]The shortage of affordable housing and potential solutions to the problem have been the subject of several recent legal commentaries. (See, e.g., Field, *Why Our Fair Share Housing Laws Fail* (1993) 34 Santa Clara L.Rev. 35; Morgan-Martinez, *Local Control in Low-Income Development: Promise of California's Article 34* (1991) 33 Santa Clara L.Rev. 765; Curtin & Jacobson, *Growth Control by the Ballot Box: California's Experience* (1991) 24 Loyola L.A. L.Rev. 1073; Millspaugh, *Municipal Low-Income Housing Controls: An Intrusive Special Interest Abuse of Police Power* (1986) 17 Pacific L.J. 349; Bozung, *A Positive Response to Growth Control Plans: The Orange County Inclusionary Housing Program* (1982) 9 Pepperdine L.Rev. 819; Burton, *California Legislature Prohibits Exclusionary Zoning, Mandates Fair Share: Inclusionary Housing Programs a Likely Response* (1981) 9 San Fernando Val.L.Rev. 19.)

required to seek the same relief on an interim basis. . . . Accordingly, it is unnecessary for plaintiffs to show a separate basis for standing to obtain a preliminary injunction, distinct from the basis for their standing to seek a writ of mandate at a trial on the merits." (*Common Cause* v. *Board of Supervisors*, *supra*, 49 Cal.3d 432, 439-440.)

In sum, appellants have standing to seek extraordinary relief in this action.

### C. *The Complaint States a Cause of Action for Declaratory Relief.*

The City claims appellants' complaint fails to state a cause of action for declaratory relief because the allegations of the complaint fail to demonstrate a present and actual controversy concerning the rights and duties of the respective parties. (Code Civ. Proc., § 1060.) The City claims the allegations of the complaint are too general and fail to establish any specific rights which the Mello act confers on appellants. Therefore, the City again argues if appellants want to challenge any specific determination their proper remedy is through administrative mandate and not through declaratory or injunctive relief.

"The material factual allegations of appellants' complaint are admitted by respondents' demurrer. . . . If these facts show the existence of an actual controversy between appellants and respondents, appellants have 'stated a legally sufficient complaint' for declaratory relief and it was an abuse of discretion to dismiss the action. . . . 'Where, therefore, a case is properly before the trial court, under a complaint which is legally sufficient and sets forth facts and circumstances showing that a declaratory adjudication is entirely appropriate, the trial court may not properly refuse to assume jurisdiction; . . . if it does enter a dismissal, it will be directed by an appellate tribunal to entertain the action. Declaratory relief must be granted when the facts justifying that course are sufficiently alleged.' 'Any doubt should be resolved in favor of granting declaratory relief.' " (*Californians for Native Salmon etc. Assn.* v. *Department of Forestry*, *supra*, 221 Cal.App.3d at pp. 1426-1427, citations omitted; 3 Witkin, Cal. Procedure, *supra*, Actions, § 48, p. 79.)

The allegations of the complaint establish at a minimum two actual and ongoing controversies between the parties. Appellants' complaint alleges the City has misinterpreted portions of section 65590 by subjecting every decision to a feasibility standard. Appellants' complaint also alleges that, despite the city council's formal policy, the City has an informal policy of nonenforcement in violation of the Mello act. Although potentially cumulative to their right to traditional mandate, these allegations are sufficient to entitle appellants to declaratory relief. (See Code Civ. Proc., § 1062;

*Californians for Native Salmon etc. Assn.* v. *Department of Forestry*, *supra*, 221 Cal.App.3d at p. 1429.)

Generally, a specific decision or order of an administrative agency can only be reviewed by a petition for administrative mandamus. (See Code Civ. Proc., § 1094.5; *Californians for Native Salmon etc. Assn.* v. *Department of Forestry*, *supra*, 221 Cal.App.3d at pp. 1428-1429; 8 Witkin, Cal. Procedure, *supra*, Extraordinary Writs, § 245 et seq., p. 869 et seq.; Cal. Civil Writs Practice, *supra*, Writ Review of Nonjudicial Decisions, § 5.5 et seq., p. 154 et seq.) However, appellants' action has a more fundamental purpose. They do not challenge any particular decision or order. Although the complaint cites alleged violations in numerous individual permit applications, it pleads them as "symptomatic of the much broader problem the action is designed to relieve." (See, e.g., *Knoff* v. *City and County of San Francisco* (1969) 1 Cal.App.3d 184, 199 [81 Cal.Rptr. 683].) Instead, appellants seek to resolve the City's fundamental misunderstanding of its responsibilities under the Mello Act to avoid continued violations or nonenforcement in the future. Declaratory relief has been held to be the proper remedy when it is alleged an agency has a policy of ignoring or violating applicable laws. (See, e.g., *Californians for Native Salmon etc. Assn.* v. *Department of Forestry*, *supra*, 221 Cal.App.3d at pp. 1428-1429.)

■ " 'The purpose of a declaratory judgment is "to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation" . . .' Another purpose is to liquidate doubts with respect to uncertainties or controversies which might otherwise result in subsequent litigation . . . ." (*Bess* v. *Park* (1955) 132 Cal.App.2d 49, 52 [281 P.2d 556], citations omitted.)

■ Appellants' complaint properly alleges a present and actual controversy whether the City's interpretation of section 65590 and the duties that statute imposes on local governments is erroneous, and whether it has an informal policy of nonenforcement of the Mello act. The City's interpretation of its responsibilities under the Mello act is a recurring problem and one involving the interpretation of a statute. The proper interpretation of a statute is a particularly appropriate subject for judicial resolution. (*Smith* v. *Anderson* (1967) 67 Cal.2d 635, 641, fn. 5 [63 Cal.Rptr. 391, 433 P.2d 183] [construction of a statute is a judicial rather than an administrative function]; *Bess* v. *Park*, *supra*, 132 Cal.App.2d at p. 53; see authorities cited in 2 Am.Jur.2d, Administrative Law, §§ 523, 524, pp. 510-512 and 22A Am.Jur.2d, Declaratory Judgments, § 68, pp. 726-727.)

In addition, judicial economy strongly favors the use of declaratory relief to avoid a multiplicity of actions to challenge the City's statutory interpretation or alleged policies. (*Bess* v. *Park*, *supra*, 132 Cal.App.2d at p. 52-53;

*Union of American Physicians & Dentists* v. *Kizer* (1990) 223 Cal.App.3d 490, 503 [272 Cal.Rptr. 886].) As against the piecemeal review of similar issues by individual challenges to specific permit applications, the present action appears singularly economical. (See also *Californians for Native Salmon etc. Assn* v. *Department of Forestry*, *supra*, 221 Cal.App.3d 1419, 1428.)

Accordingly, we conclude appellants' complaint states a cause of action for declaratory relief.

 D. *Appellants Were Not Required to Exhaust Administrative Remedies Prior to Filing Suit.*

 The City continues to assert appellants' only remedy for review of the City's land-use decisions under the Mello act was through administrative review. It claims the statute of limitations bars review of all but five of the permits listed in appellants' complaint, and as to those five, appellants are not entitled to relief because they failed to exhaust their administrative remedies prior to filing suit.

 " '[W]here an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' . . . When no exception applies, the exhaustion of an administrative remedy is a jurisdictional prerequisite to resort to the courts. . . . '[T]he doctrine of exhaustion of administrative remedies has not hardened into inflexible dogma. It contains its own exceptions, as when the subject matter of the controversy lies outside the administrative agency's jurisdiction, when pursuit of an administrative remedy would result in irreparable harm, when the administrative agency cannot grant an adequate remedy, and when the aggrieved party can positively state what the administrative agency's decision in his particular case would be.' " (*County of Contra Costa* v. *State* (1986) 177 Cal.App.3d 62, 73 [222 Cal.Rptr. 750], citations omitted.)

 The complaint in the case at bar constitutes an exception to the requirement of exhaustion of administrative remedies prior to judicial review of the City's actions. Appellants do not challenge any of the City's past land use decisions which implicate the Mello act. Instead, appellants' complaint seeks review of the City's overarching policies in implementing the requirements of the Mello act and seeks to correct the City's interpretation of its responsibilities under that statute. Consequently, they were not required to exhaust administrative remedies prior to filing suit. (*Knoff* v. *City and County of San Francisco*, *supra*, 1 Cal.App.3d 184, 199; see also authorities cited

in 22A Am.Jur.2d, Declaratory Judgments, § 84, pp. 739-741 and in 2 Am.Jur.2d, Administrative Law, §§ 523-524, pp. 510-513.)

In addition, because appellants do not challenge any specific decision under the Mello act, the three-year statute of limitations of Code of Civil Procedure section 338 to enforce a liability created by statute applies, and the 90-day statute of limitations for review of administrative decisions (§ 65907) is inapplicable. (See 8 Witkin, Cal. Procedure, *supra*, Extraordinary Writs, §§ 271, 272, pp. 900-901; Cal. Civil Writ Practice, *supra*, Writ Review of Nonjudicial Decisions, § 5.23, pp. 167-168.) Again, because appellants do not seek review of any particular permit approval, they were not required to join "indispensable parties" as the City alleges. (Code Civ. Proc., § 389, subd. (b).)

Moreover, because the City at all times maintained whether it would require replacement housing depended on whether replacement of low- or moderate-income housing was "feasible," any challenge by appellants at the administrative level would have been futile. (See, e.g., *Union of American Physicians & Dentists* v. *Kizer*, *supra*, 223 Cal.App.3d 490, 503; see also *Glendale City Employees' Assn., Inc.* v. *City of Glendale*, *supra*, 15 Cal.3d 328, 342-343 [administrative remedies designed to review individual problems arising under an agreement are manifestly inadequate to handle a dispute of the effect of underlying agreement].)

Thus none of these additional grounds asserted by the City can justify dismissal of the complaint in this case, which does not seek review of any particular decision, but instead seeks review of the City's overall policies in implementing the Mello act.

### DISPOSITION

The judgment is reversed and remanded with directions to overrule the demurrer to the complaint and for further proceedings consistent with this opinion. Appellants to recover their costs of appeal.

Lillie, P. J., and Woods, J., concurred.

A petition for a rehearing was denied August 22, 1996, and the opinion was modified to read as printed as printed above. Respondents' petition for review by the Supreme Court was denied October 23, 1996.