Filed 5/29/18

**CERTIFIED FOR PUBLICATION**


## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----


| PUBLIC EMPLOYEES' RETIREMENT SYSTEM, | C083355 |
| --- | --- |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2016-00196269-CU-MC-GDS) |
| v. | |
| SANTA CLARA VALLEY TRANSPORTATION AUTHORITY, | |
| Defendant and Respondent. | |
| PUBLIC EMPLOYEES' RETIREMENT SYSTEM, | C083961 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2016-00196269-CU-MC-GDS) |
| v. | |
| AMALGAMATED TRANSIT UNION LOCAL 1555, | |
| Defendant and Respondent. | |


APPEAL from judgments of the Superior Court of Sacramento County, David I. Brown, Steven H. Rodda, Judges. Affirmed.

1

Xavier Becerra, Attorney General, Thomas S. Patterson and Marc LeForestier, Assistant Attorneys General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General for Plaintiff and Appellant.

Robert Fabela and Richard North for Defendant and Respondent Santa Clara Valley Transportation Authority.

Leonard Carder, Peter Saltzman, Kate Hallward, and Craig Schechter for Defendant and Respondent Amalgamated Transit Union Local 1555.

California's Public Employees' Retirement System (CalPERS) (Gov. Code, § 20002),[1] as opposed to the board that *administers* the system (§ 9353), filed a complaint seeking declaratory relief regarding the proper interpretation of the effect of section 7522.02, subdivision (a)(3) (hereafter section 7522.02(a)(3)) on the pension benefits of transit workers. The CalPERS executive office had announced its own interpretation, which resulted in over 400 pending administrative appeals. As representative parties, the CalPERS executive office named as defendants a transit agency (the Santa Clara Valley Transportation Authority (Santa Clara Transit)) and an employee representative for a different Bay Area transit agency (the Amalgamated Transit Union Local 1555 (Local 1555)), which had been supporting the arguments of their employees and members, and had filed administrative appeals of their own.

Santa Clara Transit filed a demurrer, which the trial court sustained, entering judgment in its behalf. Local 1555 then filed a motion for judgment on the pleadings, which the trial court granted, entering a separate judgment in its behalf. In each ruling, the trial court concluded that the CalPERS executive office was subject to the procedural prerequisite of the exhaustion of administrative remedies, as the issue was pending in the appeals before the CalPERS board, and the CalPERS executive office had not established any exception to exhaustion in its allegations. The CalPERS executive office separately

---

[1] Undesignated statutory references are to the Government Code.

2

appealed from each judgment. We have consolidated the appeals for purposes of consideration and argument.

The CalPERS executive office continues to assert it may bypass the process in CalPERS regulations for administrative appeals to the CalPERS board and proceed directly to the trial court to obtain a declaratory judgment on its interpretation of section 7522.02(a)(3). In its response to supplemental briefing that we requested, it also contends that it is not subject to the general rule that an action for declaratory relief is not appropriate for the review of administrative decisions in lieu of a petition for a writ of mandate. (*City of Pasadena v. Cohen* (2014) 228 Cal.App.4th 1461, 1466-1467 (*City of Pasadena*).) Neither position is tenable. We shall affirm the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

There is little we need to add to our introduction other than procedural details. As fascinating as the underlying substantive issue of pension benefits may be, it is not before us. We provide a quick précis in order to provide context for the dispute.

Effective January 1, 2013, the Legislature revised public employee pension benefits for new hires by enacting the California Public Employees' Pension Reform Act of 2013 (PEPRA) (§ 7522 et seq.), generally reducing benefits under the existing structure in order to lower the cost of the pension system. (See *State of California v. U.S. Dept. of Labor* (E.D.Cal. 2016) 155 F.Supp.3d 1089, 1093 (*State of California*)). We are not concerned with the details of the reform.

The federal government disputed the application of the PEPRA to transit workers as an interference with federal law, and sought to withhold transportation grants. (*State of California*, *supra*, 155 F.Supp.3d at p. 1094.) In response, the Legislature enacted section 7522.02(a)(3) as an urgency measure in October 2013, exempting transit workers from the PEPRA until January 1, 2015, or until there was a federal district court ruling

3

that the PEPRA did not interfere with federal law, whichever came first. (See Stats. 2013, ch. 527, §§ 1, 3.) The State of California also brought suit against the federal Department of Labor in a federal district court, obtaining summary judgment in its behalf in a decision filed on December 30, 2014. (*California v. U.S. Dept. of Labor* (E.D.Cal. 2014) 76 F.Supp.3d 1125, 1148; see *State of California*, *supra*, 155 F.Supp.3d at p. 1094.)

Soon thereafter, the CalPERS executive office announced in a circular letter[2] dated February 25, 2015, that the exemption in section 7522.02(a)(3) had expired by its own terms. Hereafter, the CalPERS executive office would treat all transit workers hired between January 1, 2013, and December 29, 2014, as accruing benefits under the old system during that period, and thereafter accruing the new limited PEPRA pension benefits starting on December 30, 2014 (along with those hired on or after Dec. 30).

Not surprisingly, "[o]ver 400 of those employees then filed administrative appeals challenging [the] administrative action and interpretation of PEPRA. Several [employee representatives], including . . . Local 1555, raised the same challenges . . . on behalf of their members[, as well as assisting in their appeals]. [¶] [Santa Clara Transit] also filed an administrative appeal [in December 2015] on behalf of its employees" after the CalPERS executive office rejected its informal efforts to resolve the matter.

Although section 20134 accords the CalPERS board discretion to hold a hearing for the determination of any question regarding rights under the retirement system, the board has exercised its discretion to enact regulations that provide for an administrative appeal to the CalPERS board of the actions of its executive office (Cal. Code Regs., tit. 2, §§ 555, 555.1), which specifically state in part, "Any applicant filing an appeal shall be

---

[2] A circular letter announces the adoption of an interpretation of existing statutes or regulations as a prelude to enforcement, which does not have the status of a formal regulation. (*Bernard v. City of Oakland* (2012) 202 Cal.App.4th 1553, 1565-1566.)

4

entitled to a hearing." (Cal. Code Regs., tit. 2, § 555.2.) The hearings are to be conducted in accordance with the Administrative Procedures Act before a hearing officer, who refers any proposed decision to the CalPERS board. (Cal. Code Regs., tit. 2, § 555.4.) Nonetheless, the complaints do not indicate that a hearing or an appeal to the CalPERS board ever took place. Instead, the CalPERS executive office simply sought a declaration that its interpretation of the effect of the statutory temporary exemption was correct.

Santa Clara Transit demurred on the basis of a failure to exhaust the administrative remedy to which it was entitled under the CalPERS regulations. The trial court agreed. It concluded the CalPERS executive office could not disregard the CalPERS regulations giving an entitlement to an appeal to the CalPERS board, that exhaustion of administrative remedies is a doctrine equally applicable to an executive office of an agency, and that the CalPERS executive office had failed to establish that the CalPERS board would adhere to the executive office's statutory interpretation. Local 1555 initially took a different tack, filing an answer. After Santa Clara Transit prevailed, Local 1555 amended its answer to assert the failure to exhaust administrative remedies and sought judgment on the pleadings on this basis. The trial court rejected the CalPERS executive office's efforts to rely on federal law to persuade it to come to a different conclusion, and again noted that "[w]hile [the CalPERS] executive office announced [its] considered interpretation of § 75[2]2.02(a)(3), the administrative appeal is before [the CalPERS] board, and [the CalPERS executive office] has not positively stated that its board would not adopt an independent Administrative Law Judge's Proposed Decision that refuted the position of [the CalPERS] executive office."

**DISCUSSION**

**1.0    Declaratory Relief Is Not Available**

In *City of Pasadena*, *supra*, 228 Cal.App.4th 1461, the Department of Finance had made a final administrative determination regarding the municipality's entitlement to property tax revenues for the payment of certain obligations; the municipality sought to challenge this determination in an action for declaratory relief.  We held that the trial court erred in granting preliminary relief to the municipality because it was not entitled to *any* form of declaratory relief in this context, under the principle that declaratory relief is not an appropriate means of reviewing administrative determinations.  (*Id.* at p. 1466.)  We relied on authority that found declaratory relief inappropriate where it challenges an administrative agency's application of legal principles to a party.  (*State of California v. Superior Court* (1974) 12 Cal.3d 237, 249; *Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149, 154-155.)

Tracing this line of authority further back, we come to *Walker v. Munro* (1960) 178 Cal.App.2d 67 (*Munro*), in which parties charged with violating alcohol regulations sought declaratory relief—*in the midst of the enforcement proceedings*—that the statutes and regulations were unconstitutional and could not be enforced against them.  (*Id.* at pp. 69-70.)  Finding that a failure to exhaust administrative remedies precluded declaratory relief, *Munro* stated, "The declaratory relief provisions do not independently empower the courts to stop or interfere with administrative proceedings by declaratory decree." (*Id.* at p. 72; accord, *Imperial Mutual Ins. Co. v. Caminetti* (1943) 59 Cal.App.2d 501, 505-506 (*Imperial Mutual*).)  There is also the curious case of *Zetterberg v. State Dept. of Public Health* (1974) 43 Cal.App.3d 657 (*Zetterberg*), in which citizen plaintiffs sought a declaration that the agency had the concurrent power and duty to enforce pollution standards along with the Air Resources Board.  (*Id.* at pp. 659-660.)  It  concluded that declaratory relief was not the mechanism for challenging an

6

administrative development of policy; "[a] difference of opinion as to the interpretation of a statute as between a citizen and a governmental agency does not give rise to a justiciable controversy [citation] and provides no compelling reason for a court to attempt to direct the manner by which the agency shall administer the law." (*Id.* at pp. 663-664.)

We asked the parties to address this principle in supplemental briefing. The two defendants are quick to concur that this represents an independent basis for affirming the judgments. The CalPERS executive office begs to differ.

The CalPERS executive office first contends this principle should not apply to an administrative agency because it cannot seek judicial review of its own actions. This is being obtuse. CalPERS, *if* its action is ultimately challenged after its *board* adjudicates the issue, has the opportunity to *defend* its action in a judicial forum.

The CalPERS executive office also asserts that its issuance of an interpretive policy is not akin to the adjudicative acts in specific cases for which review through a collateral action for declaratory relief is inappropriate. It cites *Voss v. Superior Court* (1996) 46 Cal.App.4th 900, 923, which sanctioned review through declaratory relief of a quasi-legislative administrative *action* (in that case, a marketing order), but that *action* (which is akin to a rule, regulation, or statute) is not the same as seeking a judicial imprimatur for the agency *policy* at issue in the present case (as in *Zetterberg*, *supra*, 43 Cal.App.3d 657) *that is to be applied in pending cases* (as in *Munro*, *supra*, 178 Cal.App.2d 67). It is true that *Venice Town Council, Inc. v. City of Los Angeles* (1996) 47 Cal.App.4th 1547, *Californians for Native Salmon etc. Assn. v. Department of Forestry* (1990) 221 Cal.App.3d 1419, and *Bess v. Park* (1955) 132 Cal.App.2d 49 each sanctioned review by means of declaratory relief of an agency's formulation of a policy premised on its interpretation of a governing statute that was not in the context of a specific adjudication. But in each case the challenge was to an agency's policy of refusing to apply governing law. (*Venice Town Council*, *supra*, at p. 1566 [in addition to

7

case at hand, challenge generally to adding an impermissible factor to permit reviews]; *Native Salmon*, *supra*, at pp. 1422-1424, 1428-1429 [in addition to case at hand, challenging process for evaluating timber plans]; *Bess*, *supra*, at p. 52 [refusal to respond to complaint].)  Whatever the merit to the reasoning in this line of cases (which we do not determine), each of the cases involves a request for a general declaration *divorced* from its application of a specific case under consideration, unlike the present case in which the declaration will be applied in pending administrative proceedings (as in *Munro*, *supra*, 178 Cal.App.2d 67).

In short, the CalPERS executive office seeks in the present case to have the judicial branch intrude into the formulation of administrative policy, and issue a ruling to be applied in ongoing administrative proceedings before the CalPERS board. Declaratory relief is accordingly not appropriate.

**2.0     In Any Event, the Failure to Exhaust Administrative Remedies Is a Bar**

Under California law, exhaustion of administrative remedies is not a matter of judicial discretion but is a *jurisdictional* rule of procedure that forecloses judicial review until it is satisfied.  (*Knickerbocker v. City of Stockton* (1988) 199 Cal.App.3d 235, 240, citing, inter alia, *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 292.)  This absence of subject matter jurisdiction is not a defense that a party may waive. (*Quantification Settlement Agreement Cases* (2011) 201 Cal.App.4th 758, 835; *Troy Gold Industries, Ltd. v. Occupational Safety & Health Appeals Bd.* (1986) 187 Cal.App.3d 379, 385, fn. 3 ["It is to state the obvious that subject matter jurisdiction cannot be conferred by consent . . . ."].)

To begin with, we disregard the CalPERS executive office's citation of federal cases without any showing that federal law tracks California's view of the jurisdictional nature of the exhaustion of administrative remedies.  It is not of any moment that federal courts might take a more pragmatic view of the doctrine when that is not the California

rule (nor would we find it persuasive if they did).  We also do not find the doctrine of primary jurisdiction, under which a court with *concurrent* jurisdiction over a matter will abate its proceedings in favor of administrative proceedings, to provide guidance in the present case because although overlapping, it is a discretionary doctrine for courts to apply and thus unlike the jurisdictional exhaustion doctrine.  (*Farmers Ins. Exchange v. Superior Court* (1992) 2 Cal.4th 377, 390-392 (*Farmers Ins.*).)

We also disregard the CalPERS executive office's approach in its argument of eliding the distinction between itself and its governing board in referencing "CalPERS" as a single entity.  The CalPERS board reviews the actions of its executive office; the executive office consequently does not have the authority independently to bind the board to any policy.

The CalPERS executive office has a *prescribed* administrative route[3] for enforcing its interpretation of section 7522.02(a)(3) against transit workers hired in 2013 and 2014, which is through an appeal to the CalPERS *board* to *adjudicate* a precedential administrative opinion either upholding or rejecting it, after a review by an independent hearing officer from the Office of Administrative Hearings (§ 11502), at which time that ruling can be applied in the remainder of the pending appeals.  Until the CalPERS executive office completes that process, the doors of the courthouse are closed to it because there is no jurisdiction in the trial court to award declaratory relief regardless of which party prematurely sought it.  (*Munro*, *supra*, 178 Cal.App.2d at p. 72; *Imperial*

---

[3]  The CalPERS executive office does not provide any authority or compelling logic for *it* to claim the discretion granted in section 20134 to the *board* to decide whether to hold an administrative hearing, and on that basis disregard the procedure prescribed in the board regulations.  Indeed, the failure to afford administrative hearings in derogation of these regulations would appear to warrant relief in traditional mandate for failure to exercise a ministerial duty (but that is a matter for another day, as it is not a remedy that defendants have sought in the present case).

9

*Mutual*, *supra*, 59 Cal.App.2d at pp. 505-506.) Given that the fundamental purposes of the exhaustion doctrine are respect for an agency's autonomy and expertise in *adjudicating* an issue, and judicial efficiency such that "overworked courts should decline to intervene in an administrative dispute unless absolutely necessary" (*Farmers Ins.*, *supra*, 2 Cal.4th at p. 391), neither is served if we were to allow the CalPERS executive office to make an end run around its board.

Thus, the CalPERS executive office has failed to show that exhaustion does not apply in the present case. As a result, it had the burden of establishing an exception such as futility (*Parthemore v. Col* (2013) 221 Cal.App.4th 1372, 1379), which is the gist of its remaining argument (even if not framed as such).

"Unless a litigant can demonstrate that the administrative agency has indicated its predetermined decision *in the litigant's particular case*, [futility] does not apply even if the outcome in other similar cases is adverse to the litigant's position." (*Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 590.) And "[t]he mere fact that the staff of the State Commission had recommended that the accessway condition to the permit be retained does not mean that the same result would necessarily follow a public hearing by the full commission. Without some showing that the State Commission mechanically follows the recommendations of its staff, we cannot find that an appeal would have been an 'idle pursuit.' " (*La Costa Beach Homeowners Assn. v. Wayne* (1979) 89 Cal.App.3d 327, 331.) Although the CalPERS executive office asserts in peremptory manner in its briefing that it "is not apparent" that the CalPERS board "would adopt a different interpretation of section 7522.02(a)(3)," and "were that the case, *CalPERS* would not have filed the complaint"; that "[b]y filing the complaint, *CalPERS* reaffirmed that the interpretation of section 7522.02(a)(3) in the Circular Letter is the position of the agency"; that "*the agency* [*sic*] has already interpreted the law"; and that "[t]he complaint" of itself "is conclusive evidence of *CalPERS's* determination"

10

because if the CalPERS board "did not approve of the filing of the complaint, the complaint could not have been filed" (italics added), these are not *allegations* in the complaint and in any event fail to establish that the CalPERS *board* mechanically follows the recommendations of its staff in *adjudicating* administrative appeals.[4] As a result, the futility exception does not apply.

## DISPOSITION

The judgments in these matters are affirmed. Defendants shall recover costs of appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)


      BUTZ      , J.


We concur:


      RAYE      , P. J.


      ROBIE      , J.

---

[4] If the CalPERS executive office is indeed following the bidding of its board, as the executive office seems to imply, it raises the question of *why* the board would seek to avoid issuing a ruling on this matter.

11