[No. D034544. Fourth Dist., Div. One. Nov. 1, 2000.]

DENNY MALISH, Plaintiff and Appellant, v.
CITY OF SAN DIEGO, Defendant and Respondent.

## COUNSEL

Paluso & Sceper and Duane H. Sceper for Plaintiff and Appellant.

Casey Gwinn, City Attorney, Anita M. Noone, Assistant City Attorney, Christopher S. Morris and Maria C. Severson, Deputy City Attorneys, for Defendant and Respondent.

## OPINION

McINTYRE, J.—Licensed pawnbroker Denny Malish filed this action against the City of San Diego (the City) seeking a declaratory judgment that certain city ordinances regulating pawnbrokers are preempted by state law. Malish appeals from a judgment denying his motion for summary judgment and dismissing the action. We conclude certain provisions in the ordinances that Malish challenges are preempted and reverse the judgment with directions.

### FACTUAL AND PROCEDURAL BACKGROUND

Malish's complaint alleges the City, through its police department, enforces certain ordinances that are preempted by state statutes regulating pawnbrokers. Under these ordinances, the police have required Malish to have a local police permit in addition to a state license as a condition of engaging in the business of a pawnbroker, conducted warrantless searches of his business premises and engaged in disciplinary procedures against his local permit without taking any action against his state license. After the City took action to revoke his local permit, Malish claimed in an administrative hearing that the City's local ordinances are preempted by state law. The hearing officer concluded he lacked the authority to decide the legal issue of preemption, so he stayed the administrative proceedings and directed Malish to seek a judicial determination of the issue.

Malish then filed the instant action for declaratory relief under Code of Civil Procedure section 1060 and moved for summary judgment. His moving papers included a written stipulation that there were no disputed material facts and the motion was "brought solely on questions of law regarding interpretation of provisions of the San Diego Municipal Code . . . ." Concluding the ordinances in question were not preempted by state law, the court entered a judgment denying Malish's summary judgment motion and dismissing the action.

## I. *Propriety of Declaratory Relief*

■ Preliminarily, the City contends that Malish's declaratory action is improper because he failed to exhaust his administrative remedies and the complaint does not allege an actual controversy. We disagree. First, it is undisputed that Malish was pursuing his administrative remedies when the hearing officer suspended the administrative proceedings pending judicial resolution of the preemption issue. Thus, with respect to his preemption defense, Malish's administrative remedies were effectively exhausted when the hearing officer suspended the hearing and directed Malish to file the instant action. Second, Malish's complaint sufficiently pleads an actual controversy because it alleges he is presently and continually subject to revocation of his local permit, criminal prosecution, and other enforcement actions by the City under ordinances that are preempted by state law. Because these ordinances have a direct and continuing effect on the operation of his business and subject him to further prosecution (e.g., for operating without a local permit), Malish's complaint presents an actual controversy properly adjudicated though an action for declaratory relief. (*Alameda County Land Use Assn. v. City of Hayward* (1995) 38 Cal.App.4th 1716, 1723 [45 Cal.Rptr.2d 752]; *California Water & Telephone Co. v. County of Los Angeles* (1967) 253 Cal.App.2d 16, 24-26 [61 Cal.Rptr. 618].)

## II. *Preemption*

### A. *State legislation*

Business and Professions Code article 4 (Article 4), regulates pawnbrokers and other secondhand dealers. Similar provisions regulating pawnbrokers only are set forth in Financial Code section 21200 et seq. Business and Professions Code section 21625 expresses the Legislature's intent to "curtail the dissemination of stolen property and to facilitate the recovery of stolen property by means of a uniform, statewide, state-administered program of regulation of [pawnbrokers and other secondhand dealers] and to aid the State Board of Equalization to detect possible sales tax evasion." The statute also states the Legislature's intent to require uniform statewide reporting of property acquired by pawnbrokers and concludes with the statement: "[I]t is the intent of the Legislature that this article shall not be superseded or supplanted by the provisions of any ordinance or charter of any city, county, or city and county." (*Ibid.*)

Notwithstanding Business and Professions Code section 21625, however, the Legislature has expressly recognized and authorized additional regulation of pawnbrokers and other secondhand dealers by local government.

Business and Professions Code section 21637 provides that the state regulatory statutes do not excuse compliance with local ordinances concerning "the reporting, holding, or releasing of tangible personal property, not inconsistent with the provisions of [Article 4] . . . ." Business and Professions Code section 21638 provides that Article 4 does not prohibit a city or county from enacting, amending or enforcing a local ordinance relating to secondhand dealers if the ordinance "is not inconsistent with the provisions of [Article 4] . . . ." Both statutes expressly prohibit local governments (or any other state agency) from adopting "[i]dentification, holding, or reporting requirements for the acquisition of tangible personal property, in the ordinary course of business, by pawnbrokers and secondhand dealers, other than as set forth in Sections 21628, 21630, 21633, and 21636 of this code, and Section 21208 of the Financial Code." (Bus. & Prof. Code, §§ 21637, subd. (b), 21638, subd. (b).)

■ Because Business and Professions Code sections 21637 and 21638 expressly recognize and authorize local regulation of pawnbrokers and other secondhand dealers, this case presents no issue of express or implied preemption of the entire field of such regulation. (*San Diego Gas & Electric Co. v. City of Carlsbad* (1998) 64 Cal.App.4th 785, 799-800 [75 Cal.Rptr.2d 534]; *Suter v. City of Lafayette* (1997) 57 Cal.App.4th 1109, 1121 [67 Cal.Rptr.2d 420] [no implied preemption where local regulations are expressly authorized by the Legislature or recognized in a statutory scheme].) Rather, the local ordinances challenged by Malish are preempted by state law only to the extent they exceed the scope of local regulation permitted by Business and Professions Code sections 21637 and 21638. We separately address the challenged ordinances.

B.  *San Diego Municipal Code Section 33.0101*

San Diego Municipal Code section 33.0101 provides that certain listed occupations and businesses, including pawnbroker businesses, are designated as "police regulated" and subject to the City's rules and regulations "as a prerequisite to the granting of a license for, or the conducting of such occupation or business." (All further section references are to the San Diego Municipal Code unless otherwise specified.) Section 33.0101 further provides it is a misdemeanor to operate a police regulated business without a valid police permit.

Malish contends section 33.0101 is inconsistent with the legislative intent to establish uniform, statewide, state-administered regulations because it conflicts with the provisions of the Business and Professions Code and the Financial Code governing the terms and conditions under which local authorities must issue a *state* license to engage in pawnbroker business at a

particular address in the City. Since the City is compelled to issue a state pawnbroker license to a qualified applicant, Malish contends it is unnecessary and inconsistent with state law to require a local regulatory permit.

As noted, local governments are authorized under Business and Professions Code section 21638 to enact as well as *enforce* ordinances regulating pawnbrokers, as long as the ordinances are not inconsistent with the provisions of Article 4 (or the corresponding sections of the Financial Code regulating pawnbrokers). The statute neither delineates nor limits the manner in which local governments may enforce ordinances that are not inconsistent with Article 4. Consequently, local governments are not precluded from using established and reasonable enforcement mechanisms in the exercise of their police power, including a local permit system. (See *Suter v. City of Lafayette, supra,* 57 Cal.App.4th at pp. 1120-1121 [requirement of local license to sell firearms does not conflict with state licensing requirements where no statutory language specifically prohibits local licensing and state law expressly allows supplementary local regulation].)

Section 33.0101 merely implements a local permit system as a means of enforcing other regulations and ordinances enacted by the City; it does not impose any particular regulation on pawnbrokers other than the requirement of a local permit. We conclude the City's local permit system is a proper means of enforcing local regulatory ordinances that are not inconsistent with state regulatory statutes.

In oral argument Malish contended a local permit is unnecessary because the City could take action against a pawnbroker's state license for any violations of local ordinances or regulations. However, there is no express statutory authority for revoking a state license based on violations of local regulations. The grounds for forfeiture of the state license are enumerated in Business and Professions Code section 21642 and Financial Code section 21301. Neither statute includes violation of local regulations or ordinances as one of the grounds for forfeiture.

Even if the City has the authority to take action against the state license for violations of local ordinances and regulations, it does not follow that the ordinance requiring a local permit is preempted. State law authorizes a city or county to enact an ordinance relating to secondhand dealers as long as the ordinance is not inconsistent with the state regulatory statutes. (Bus. & Prof. Code, § 21638.) The requirement of a local permit may be duplicative of the requirement of a state license and arguably unnecessary, but it is not per se inconsistent with the requirement of a state license. Section 33.0101 is not preempted.

## C. *Section 33.0102*

Section 33.0102 grants the police the right to make regular inspections of regulated businesses "during normal operating hours" and provides that the "right of reasonable inspection hereunder to enforce the provisions of this Article shall be a condition of the issuance of a police permit . . . ." Malish contends section 33.0102 effectively conditions the issuance of his local permit on unrestricted police access to his business. He argues the ordinance conflicts with the legislative goal of uniform statewide regulation because there is no such right of inspection under state law.

Section 33.0102 does not give the police unrestricted access to Malish's business, as Malish contends, but rather restricts the police to *reasonable* inspection during normal business hours. The ordinance does not conflict with state law. Financial Code section 21206 provides: "Every pawnbroker shall produce his or her records of loans and all pledged property, for inspection by the following persons:

"(a) Any officer holding a warrant authorizing him or her to search for personal property.

"(b) Any peace officer or employee designated by the chief of police or sheriff.

"(c) Any officer holding a court order directing him or her to examine such records or pledged property."

Considering that subdivision (a) of the statute authorizes a search by *any* officer "holding a warrant" whereas subdivision (b) authorizes searches by local police with no mention of a warrant, we construe the statute as authorizing local police to conduct warrantless searches of a pawnbroker's business. Hence, section 33.0102's allowance of warrantless searches by local police is consistent with Financial Code section 21206.

Further, section 33.0102's inspection provision is consistent with Business and Professions Code section 21636, which requires secondhand dealers to hold and produce personal property "for inspection by any peace officer or employee designated by the chief of police or sheriff." (Bus. & Prof. Code, § 21636, subds. (a) & (b).) If the property is located off the dealer's business premises, the dealer must produce it at the business premises *within one day* of a request. (Bus. & Prof. Code, § 21636, subd. (c).) Like section 33.0102, Business and Professions Code section 21636 contains no requirement of a search warrant for inspections by local police. Its provision that property off the premises must be produced within one day of a request implies that

property held on the premises is subject to immediate inspection during the 30-day holding period. Both Business and Professions Code section 21636 and Financial Code section 21206 are facially less restrictive of police conduct than section 33.0102, as neither statute expressly limits police inspections to normal business hours as does section 33.0102. Because section 33.0102 gives local police no greater right of access and inspection than the statutory inspection provisions, it is not inconsistent with those provisions.

Malish additionally contends section 33.0102 violates the law governing warrantless searches i.e., the Fourth Amendment. A number of state and federal courts considering similar warrantless inspection provisions have held that the government's substantial interest in controlling theft of property brings inspections of a secondhand dealer's business records or property within the "closely regulated business" exception to the warrant requirement. (*Winters v. Board of County Com'rs* (10th Cir. 1993) 4 F.3d 848, 852; *Peterman v. Coleman* (11th Cir. 1985) 764 F.2d 1416, 1420-1422, and state cases cited therein; *Howell v. Roberts* (N.D.Ga. 1987) 656 F.Supp. 1150, 1153-1154 .) Some courts have upheld the constitutionality of such warrantless inspections in part because the authorizing statute or ordinance imposes time, place, and scope restrictions similar to those imposed by section 33.0102. (*New York v. Burger* (1987) 482 U.S. 691, 711 [107 S.Ct. 2636, 2648, 96 L.Ed.2d 601] [statute's limitation of warrantless searches of automobile junkyards to searches of vehicles or parts of vehicles on the premises during normal business hours were "appropriate restraints upon the discretion of the inspecting officers"]; *Gallaher v. City of Huntington* (4th Cir. 1985) 759 F.2d 1155, 1159-1160 [limitation of warrantless inspection of gem and precious metal dealers' records to the normal business hours minimized the intrusiveness of the search, as there was no need to fear "police harassment during the wee hours of the night"]; *S & S Pawn Shop Inc. v. City of Del City* (10th Cir. 1991) 947 F.2d 432, 439 [upholding constitutionality of statute limiting searches of pawnshops to a "reasonable time"].)

Based on the foregoing authority, we reject Malish's contention that section 33.0102 violates the law governing warrantless searches. Inspections of Malish's business under the ordinance clearly fall within the "closely regulated business" exception to the warrant requirement addressed in *New York v. Burger, supra,* 482 U.S. 691, and the ordinance's limitation of searches to *reasonable* inspections during "normal operating hours" places sufficient time, place and scope restraints on the discretion of the inspecting officers to pass constitutional muster. Section 33.0102 is valid and enforceable.

D. *Sections 33.0105, 33.0304 and 33.0401*

Section 33.0304 sets forth various grounds for denial of a local permit. Section 33.0105(c) provides, among other things, that "[a]ction to deny, suspend or revoke a license or permit under this Article may be taken based on an act, omission, or attempt that contravenes the applicable provisions of this Article or of any other provision of law . . . ." Section 33.0401 authorizes the chief of police to take action to suspend or revoke a local permit "[i]n the event that any person holding [the permit] . . . shall violate or cause or permit to be violated any of the provisions of this Article, or any provision of any other Article, ordinance or law relating to or regulating said business or occupation, or shall conduct or carry on the business in a manner which manifests a disability to perform properly the duties of the business or occupation as evidenced by the commission of an act or series of acts . . . ."

Malish contends these ordinances conflict with the legislative objective of uniform statewide regulation because they impose different standards for denial, suspension or revocation of the local permit than the standards under state law for denial, suspension or revocation of the state license. Specifically, the ordinances empower the City to deny, suspend or revoke a local permit based on a single violation of the Municipal Code or any other law whereas a state license may not be denied or forfeited "solely on the grounds that [the licensee] violated any provision [of a state regulatory statute] unless the violation demonstrates a pattern of conduct." (Bus. & Prof. Code, §§ 21641, subd. (c), 21642, subd. (c); Fin. Code, §§ 21300, subd. (c), 21301, subd. (c).) The City concedes the local permit is more easily forfeited than the state license.

We have reviewed the grounds for *denial* of a local permit under section 33.0304 and conclude none of them are inconsistent with the state licensing statutes. The principal ground for denial of a state license under Business and Professions Code section 21641 and Financial Code section 21300 is a prior conviction of an offense involving stolen property. The grounds for denial of the local permit listed in section 33.0304 constitute supplemental regulations that fall within the reasonable exercise of the City's police power and do not offend the spirit of the state licensing statutes (e.g., intentional misrepresentation in the application; noncompliance with building, fire, electrical, zoning, plumbing or health regulations; applicant is under the age of 18; operation of the business would be contrary to law; the applicant was convicted within the past five years of a crime involving theft, moral turpitude, physical violence or deceptive trade practices). Accordingly, section 33.0304 is not preempted by state law.

However, we agree with Malish that the provisions of sections 33.0105 and 33.0401 allowing the City to deny, suspend or revoke a local permit based on *any* violation of applicable state law are inconsistent with the statutory prohibition against denial or forfeiture of a state license "solely on the grounds that [the licensee] violated any provision [of a state regulatory statute] unless the violation demonstrates a pattern of conduct." (Bus. & Prof. Code, §§ 21641, subd. (c), 21642, subd. (c); Fin. Code, §§ 21300, subd. (c), 21301, subd. (c).) The quoted language indicates a legislative intent that a person not be deprived of the right to engage in a legitimate business without substantial justification. Denial or revocation of a local permit based on a single, possibly minor, statutory violation or occasional statutory violations not showing a pattern of misconduct would frustrate that intent.

The City argues there is no inconsistency with state law because the more stringent grounds for denial or loss of a permit under sections 33.0105 and 33.0401 apply only to the local permit and not the state license. The City's argument is unavailing. Because the state license permits operation of the business only at the address specified on the application—i.e., in the City— (Fin. Code, § 21300), it is useless without the local permit. The local ordinances are inconsistent with state law because they allow the City to put a pawnbroker out of business based on a single violation of state law whereas the state statutes allow license forfeiture based on a violation of state law only if the violation shows a pattern of conduct.

Accordingly, we conclude sections 33.0105 and 33.0401 are invalid to the extent they authorize denial or revocation of a local permit based on a violation, not showing a pattern of misconduct, of any provision of the relevant sections of the Business and Professions Code, the Financial Code, or any local ordinance that duplicates such a provision. Our conclusion, however, does not extend to violations of valid local ordinances that do not duplicate provisions of the relevant regulatory statutes. Enforcement of such ordinances as provided in sections 33.0105 and 33.0401 is not inconsistent with the statutes prohibiting denial or forfeiture of a license based solely on a *statutory* violation that does not demonstrate a pattern of conduct.

E. *Section 33.1101*

Section 33.1101 requires junk dealers, pawnbrokers and other secondhand dealers to "keep a record in accordance with state law of any and all articles acquired by purchase, pledge or otherwise" and provides that the record and articles are subject to police inspection at all times during ordinary business hours. The ordinance further requires the pawnbroker or dealer to deliver

daily to the chief of police a written report of all articles acquired the preceding day. Malish contends the ordinance is preempted because Business and Professions Code sections 21637 and 21638 prohibit local governments from establishing reporting requirements and because it duplicates the state reporting statutes.

Business and Professions Code sections 21637 and 21638 do not completely bar local governments from establishing reporting requirements. As noted, they prohibit only the adoption of "[i]dentification, holding, or reporting requirements for the acquisition of tangible personal property, in the ordinary course of business, by pawnbrokers and secondhand dealers, *other than as set forth in Sections 21628, 21630, 21633, and 21636 of this code, and Section 21208 of the Financial Code.*" (Italics added.) Accordingly, the City may adopt reporting requirements as long as they are not different than those set forth in the reporting statutes referenced in Business and Professions Code sections 21637 and 21638.

Section 33.1101 is inconsistent with the state reporting statutes in several respects. The ordinance requires daily reporting on forms "approved by the Chief of Police" (*ibid.*) whereas Business and Professions Code section 21628 and Financial Code section 21208 require daily reporting on forms "approved or provided at actual cost by the Department of Justice." Further, although Business and Professions Code section 21628 sets forth more detailed and specific reporting requirements for pawnbrokers than section 33.1101, the ordinance imposes two requirements that are not included in the statute, namely, that the report include "the hour and date of the transaction and a reasonable description and true name of the person from whom such article was so acquired, as accurately as can be obtained by the person making such report." Because these requirements are "other than" the identification and reporting requirements set forth in Business and Professions Code section 21628 and related reporting statutes, they are expressly prohibited by Business and Professions Code sections 21637 and 21638.

Relying on *Miller v. Murphy* (1983) 143 Cal.App.3d 337 [191 Cal.Rptr. 740], the City argues that the Legislature has authorized local governments to require other information on a pawnbroker's daily report than that required under Business and Professions Code section 21628. *Miller* noted the statute provides that the report shall "include, but not be limited to, the [information specified in the statute]." (Bus. & Prof. Code, § 21628.) *Miller* concluded "the Legislature, by the words, 'but not be limited to,' indicated that it only meant to set forth the minimum requirements for the daily report. It extended an invitation to local governments to add to the information required on the reports, as long as the minimal requirements of section 21628 were followed." (*Miller v. Murphy, supra,* 143 Cal.App.3d at p. 341.)

The City's reliance on *Miller* is undermined by the fact that when that case was decided, the Legislature had not yet amended Business and Professions Code sections 21637 and 21638 by adding to both statutes the subdivision expressly prohibiting local identification and reporting requirements "other than as set forth in Sections 21628, 21630, and 21633 of this code, and Section 21208 of the Financial Code." (Stats. 1986, ch. 826, §§ 2 & 3, p. 2809.) This direct and specific proscription against adopting different identification and reporting requirements controls over the general language in Business and Professions Code section 21628 that *Miller* interpreted as indirectly authorizing local governments to impose additional reporting requirements. (*Shamblin v. Polich* (1973) 32 Cal.App.3d 756, 761 [108 Cal.Rptr. 410].) Accordingly, the provisions of section 33.1101 imposing identification and reporting requirements other than those set forth in the state reporting statutes are invalid.

However, we reject Malish's contention that section 33.1101 is preempted to the extent it *duplicates* state law requiring pawnbrokers to keep records of loans and property transactions and subjecting those records and property to police inspection. Although as a general rule duplicative ordinances are preempted (*Sherwin-Williams Co. v. City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534]), that rule does not apply here because the Legislature has expressly authorized duplicative ordinances regulating pawnbrokers by allowing the enactment and enforcement of ordinances that are not inconsistent with state law, and prohibiting the adoption of local identification, holding or reporting requirements only if they are "other than" as set forth in the relevant state statutes. (Bus. & Prof. Code, §§ 21637, 21638.)

F.  *Section 33.1103*

Section 33.1103 requires pawnbrokers to keep a record of all loans and provides that the record is open to police inspection at all times during ordinary business hours. Malish does not point to any inconsistency between section 33.1103 and state law, but rather contends the ordinance, along with section 33.1101, improperly duplicates state law. As noted, duplication of a regulatory statute concerning pawnbrokers is not a basis to deem a local ordinance preempted. Financial Code section 21206 requires pawnbrokers to produce records of loans for police inspection. Implicit in the requirement that records be produced is the requirement that they be kept. Thus, section 33.1103 is consistent with, if not precisely duplicative of, Financial Code section 21206. Because section 33.1103 is not inconsistent with any other applicable regulatory statute, it is valid under Business and Professions Code sections 21637 and 21638.

## G.  *Section 33.1104*

Section 33.1104 largely duplicates Business and Professions Code section 21636, subdivision (a), which requires a secondhand dealer to hold for a period of 30 days all tangible property the dealer acquires in the course of business, unless the chief of police for good cause authorizes a prior disposition. Under Business and Professions Code sections 21636 and 21637, the City is prohibited from adopting any holding requirements other than those set forth in Business and Professions Code section 21636. There are two impermissible, though minor, inconsistencies between section 33.1104 and Business and Professions Code section 21636. First, the statute requires the dealer to hold property for 30 days from the date the report of its acquisition is made to the chief of police or sheriff, whereas the 30-day period under section 33.1104 commences from the date the property is "received or purchased." Second, section 33.1104 requires the dealer, during the 30-day period, to keep the property "unaltered, as pledged or purchased, in lots separate and apart from other articles, merchandise or things in the [dealer's place of business] . . . ." No such segregation requirement or prohibition against alteration is set forth in Business and Professions Code section 21636. Because these provisions of section 33.1104 are holding requirements "other than" those set forth in Business and Professions Code section 21636, they are expressly prohibited by Business and Professions Code sections 21637 and 21638.

### DISPOSITION

The judgment is reversed. The case is remanded with directions to enter a new judgment declaring:

1.   Sections 33.0101, 33.0102, 33.0304, and 33.1103 are valid and not preempted by state law.

2.   Sections 33.0105 and 33.0401 are inconsistent with state law and therefore preempted to the extent they authorize denial or revocation of a local permit based on a violation, not showing a pattern of misconduct, of any of the provisions referenced in Financial Code section 21300, subdivision (c), or any ordinance that duplicates any of those provisions.

3.   The provisions of section 33.1101 requiring that daily reports be on forms approved by the chief of police and include "the hour and date of the transaction and a reasonable description and true name of the person from whom such article was so acquired, as accurately as can be obtained by the person making such report" are preempted by Business and Professions

Code sections 21637 and 21638 as identification and reporting requirements other than those set forth in Business and Professions Code sections 21628, 21630 and 21633 and Financial Code section 21208.

4. The provisions of section 33.1104 requiring the dealer to hold property for 30 days from the date it is "received or purchased" and requiring the dealer, during the 30-day period, to keep the property "unaltered, as pledged or purchased, in lots separate and apart from other articles, merchandise or things" in the dealer's place of business are invalid under Business and Professions Code sections 21637 and 21638 as holding requirements other than those set forth in Business and Professions Code section 21636.

Malish is awarded his costs on appeal.

Benke, Acting P. J., and Huffman, J., concurred.