Filed 1/9/14; pub. & mod order 2/7/14 (see end of opn.)

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| COLLATERAL LOAN AND SECONDHAND DEALERS ASSOCIATION, | C070987 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2012-00118609-CU-JR-GDS) |
| v. | |
| COUNTY OF SACRAMENTO et al., | |
| Defendants and Respondents. | |

Plaintiff Collateral Loan and Secondhand Dealers Association (CLSDA), a trade association of licensed pawnbrokers and secondhand dealers, brought this action for injunctive relief on behalf of members located in Sacramento County. CLSDA sought to prevent defendant Scott Jones (sued in his official capacity as Sheriff of Sacramento

1

County) (the Sheriff) from enforcing various provisions of Sacramento County Ordinance No. 1505 (the ordinance) that defendant County of Sacramento (defendant County or, collectively, defendants) enacted in December 2011, replacing title 4, chapter 4.30 of the Sacramento County Code. CLSDA argued the ordinance's creation of a detailed countywide reporting system for pawnbrokers and secondhand dealers conflicted with state law on the subject (i.e., Bus. & Prof. Code, § 21625 et seq.[1] and portions of the Financial Code). The parties stipulated to a moratorium on enforcement of the ordinance pending a hearing on CLSDA's noticed motion for a preliminary injunction.

After the hearing, the trial court granted a preliminary injunction as to only two minor provisions of the ordinance. It concluded that CLSDA had otherwise failed to demonstrate that it was likely to prevail on the merits of its claims. CLSDA filed a timely notice of appeal from the trial court's order. (*Courtesy Temporary Service, Inc. v. Camacho* (1990) 222 Cal.App.3d 1278, 1286 [order partially granting and partially denying preliminary injunction appealable].)

CLSDA contends chapter 4.30 of the Sacramento County Code expressly conflicts with state law in various respects.[2] We agree. In light of this holding, we do not need to reach CLSDA's additional contention that the ordinance violates the right to privacy in financial information. We will therefore modify the trial court's order to include these additional subjects within the scope of the preliminary injunction against enforcement.

---

[1] Undesignated statutory references are to the Business and Professions Code.

[2] Initially, CLSDA had also argued the remainder of the ordinance was invalid as duplicative of state law, but CLSDA appears to concede in its reply brief that this general principle does not apply in the present context.

# FACTUAL AND PROCEDURAL BACKGROUND

This action is essentially a facial challenge to defendant County's ordinance based on the provisions of state law; the facts adduced at the hearing generally are not material to our disposition. As a result, there is little factual or procedural background before our discussion of the applicable law.

The verified complaint identifies 11 of the 19 substantive sections of the ordinance as "duplicat[ing], contradict[ing] and add[ing] on to . . . an area of regulation fully occupied by general laws of this state," and alleges the Sheriff was notifying the affected businesses that an electronic reporting (e-filing) system contained in the ordinance was mandatory. The complaint also alleged that the Sheriff had already identified a particular private vendor, Business Watch International (BWI); and acquisition of the hardware and software necessary for reporting to BWI would result in significant costs (about $850 before a discount, according to four proposals attached as exhibits to the complaint). CLSDA therefore requested injunctive relief, and a judicial declaration of the invalidity of the ordinance.

In support of the request for a preliminary injunction, CLSDA included three declarations. Its counsel stated that he had been working in support of legislation to fund a statewide uniform e-filing system through an increase in state license fees, which the Department of Justice (DOJ) would maintain (asking for judicial notice of the February 2011 version of Assem. Bill No. 391). Counsel was also familiar with BWI, and averred that the information it would collect would be stored on servers outside the state that are not under the control of the DOJ. He included a copy of the DOJ form (JUS-123) that CLSDA members were presently filing with police chiefs or sheriffs, which gathered the information specified in section 21628. A Sacramento County member of CLSDA stated that the Sheriff had been insisting the member's businesses adopt the e-filing system, which would subject the member to conflicting reporting requirements under local and

3

state law, and result either in the additional costs of computer equipment or sanctions under the ordinance for noncompliance (which include criminal punishment or grounds for action against the license required under the ordinance (Sac. County Code, § 4.30.100)). The memorandum in support of the request for preliminary injunction included exhibits that detailed the manner in which the ordinance duplicated state law, or conflicted with or added to state requirements (specifying seven sections in the latter exhibit).

In their opposition, defendants noted the provisional status of any pending laws. They also included declarations that attested to the mistaken and limited nature of the representations regarding the mandatory aspect of e-filing under the ordinance; the secure nature of the out-of-state server housed in a police facility to which BWI would route the e-filings; the minimal actual costs of e-filing with BWI (a process which does not require the hardware and software that CLSDA had identified); the Sheriff's use of the DOJ's JUS-123 forms rather than a different form; and the DOJ's refusal since 1990 to be a statewide depository of JUS-123 forms, which are instead stored with local agencies and are subject only to whatever efforts each agency makes to collect and retrieve the data from them (without statewide dissemination or access).

In its tentative ruling, the trial court agreed that CLSDA was likely to prevail on its assertion that provisions in Sacramento County Code section 4.30.025, subdivision (A) (those which mandate a daily 10:00 a.m. deadline for mailing or e-filing the reports and the use of a sheriff's form) are inconsistent with state law, and that there was a threat of irreparable injury because violations were subject to criminal prosecution and a threat to licensure status. However, with respect to the claimed conflict between the creation in Sacramento County Code section 4.30.025, subdivision (C) of an e-filing system other than the contemplated DOJ-created system under state law (former § 21628, subd. (j),

4

Stats. 2010, ch. 178, § 16),[3] and the ordinance permitting use of defendant County's e-filing system rather than the hardcopy reports required under the state law, the trial court concluded CLSDA was not likely to prevail. It held that defendant County's e-filing system was optional and thus not a "requirement" inconsistent with the provisions of state law, and state law did not expressly preclude development of local e-filing systems. The court did not address any of the other conflicts raised in CLSDA's briefing. It also rejected CLSDA's invocation of the general principle that ordinances duplicative of state law are preempted, because the Legislature has authorized duplicative ordinances relating to pawnbrokers. (*Malish v. City of San Diego* (2000) 84 Cal.App.4th 725, 736 (*Malish*).) The ruling did not address the subject of the pending Assembly Bill No. 391 (2011-2012 Reg. Sess.).

At the hearing on the preliminary injunction, CLSDA's primary focus was the ordinance's e-filing system. It conceded that participation was indeed voluntary, but argued that it was inconsistent with state law and impermissibly sought to give the covered businesses an ability to opt out of the paper reports required under state law. The CLSDA also raised several other conflicts identified in its briefing that the trial court had not addressed in its tentative ruling: (1) the inclusion in Sacramento County Code section 4.30.030 of additional mandatory elements for the reports (subd. (H) of which requires a description of a pledger's "style of dress, height, age, sex, complexion, color of mustache or beard, or both, where the same are worn, and if neither is worn, such fact shall be noted") that are not specified in state law; (2) the inclusion in Sacramento County Code section 4.30.050, subdivision (C) of a "hold" on any transaction after the pledging of an item for specified time periods that are inconsistent with state law; (3) the authorization in Sacramento County Code section 4.30.090 to collect a transaction fee to defray the

---

[3] The parties conceded that the DOJ had yet to act on this statutory authorization as of the time of the hearing.

5

costs to the pawnbrokers and dealers of licensure under the ordinance and the e-filing system, which is not among the charges that state law permits pawnbrokers to recover as compensation; and (4) Sacramento County Code section 4.30.015, subdivision (D)'s definition of "pawnbroker" adds to the definition under state law in an unclear manner. Following the hearing, the trial court reiterated its tentative ruling in April 2012 without substantive change.

In August 2012, the Legislature enacted Assembly Bill No. 391 (2011-2012 Reg. Sess.) as an urgency measure. (Stats. 2012, ch. 172, §§ 2-6.) We will address its pertinent provisions in the Discussion.

## DISCUSSION

### I. General Preemption Principles

"Ordinarily, a party challenging the superior court's ruling on a motion for a preliminary injunction must demonstrate an abuse of discretion in evaluating the interrelated factors of the plaintiff's likelihood of success and the magnitude of interim harm to the plaintiff if the preliminary injunction is denied." (*Efstratis v. First Northern Bank* (1997) 59 Cal.App.4th 667, 671.) "However, where the superior court (as here) limits its ruling to only one of these factors, it is that ground which must conclusively support the order." (*Ibid.*) "Where the 'likelihood of prevailing on the merits' factor depends upon a question of law rather than upon evidence to be introduced at a . . . full trial, the standard of review is not abuse of discretion but whether the superior court correctly interpreted and applied statutory law, which we review de novo." (*Id.* at pp. 671-672.) We review a request for injunctive relief under the law in effect *at the time*

*we render our decision*. (6 Witkin, Cal. Procedure (5th ed. 2008) Provisional Remedies, § 402, p. 344.)**4**

If local ordinances and regulations conflict with state law, they are preempted. A conflict exists if it touches upon a subject that state law expressly (or through necessary implication) fully occupies, or where it duplicates (by being coextensive) or contradicts state law on a subject. (*O'Connell v. City of Stockton* (2007) 41 Cal.4th 1061, 1067-1068.)

On the subject of the regulation of pawnbrokers and secondhand dealers, the Legislature has expressly declared that it was enacting these provisions "to curtail the dissemination of stolen property and to facilitate the recovery of stolen property by means of *a uniform*, *statewide*, *state-administered program of regulation* . . . . [¶] . . . [¶] . . . [T]his article shall not be superseded *or supplanted* by the provisions of any ordinance or charter . . . ." (§ 21625, 1st & 3d pars., italics added.) To this end, sections 21637 and 21638 prohibit any locality from adopting any "[i]dentification, holding, or reporting requirements for the acquisition of tangible personal property . . . by pawnbrokers and secondhand dealers, other than as set forth in Sections 21628 . . . and 21636" (§ 21637, subd. (b)) except where (in the classic double negative) "not inconsistent" with state law (§ 21637). Because these statutes recognize the possibility of "not inconsistent" local legislation, we are not concerned with express or implied preemption of the subject of regulation. (*Malish*, *supra*, 84 Cal.App.4th at p. 729.) Thus, a locality may require a local license in addition to the state license issued to pawnbrokers and secondhand dealers, because even if "duplicative" and "arguably unnecessary," this "is not per se inconsistent with the requirement of a state license."

---

**4** We thus disregard defendants' efforts to have us blindfold ourselves to Assembly Bill No. 391.

7

(*Id*. at p. 730.)  It is also permissible for a locality to provide rights of access and inspection to its law enforcement agencies no greater than that allowed under state law. (*Id*. at p. 732.)  On the other hand, revocation of a local license on grounds broader than authorized for revocation of a state license (e.g., for a single violation of state law rather than a pattern of conduct) is actually inconsistent with state policy and therefore preempted (*id*. at p. 734), and in the particular context of identification, holding, and reporting requirements, a locality cannot require a form other than the JUS-123, or add requirements other than those specified in section 21628 (*Malish*, *supra*, at pp. 735, 736; accord, *id*. at pp. 736-737 [upholding another duplicative local provision, and striking down provisions specifying holding requirements other than those appearing in state law]).

## II.  Local E-filing System

At the time of the trial court's ruling, former section 21628 (Stats. 2010, ch. 178, § 16) provided that pawnbrokers and other secondhand dealers "shall report daily, or on the first working day after receipt or purchase of the property, on forms either approved or provided at actual cost by the [DOJ], all tangible personal property . . . [acquired in the course of business], to the chief of police or to the sheriff . . . ."  In subdivisions (a) to (g), the statute then prescribed the contents of the reports.  In subdivision (j), the statute first directed the DOJ to develop categories of tangible personal property to be incorporated into the reports, and to develop a format for e-filing; it then provided, "Twelve months after the [e-filing] format and the categories . . . have been developed, each secondhand dealer . . . shall [e-file] using this format the information required by this section . . . . Until that time, each secondhand dealer . . . may either continue to report this information using existing forms and procedures or may begin [e-filing] . . . as soon as [the categories and format have] been developed."  (§ 21628, subd. (j)(2), (1).)

8

Four months after the trial court's ruling, the newly enacted Assembly Bill No. 391 declared, "It is the intent of the Legislature to enact legislation that fully funds the cost of developing and implementing a *single*, *statewide*, *uniform* [*e-filing*] *reporting system* of the information required to be reported in accordance with Section 21628 . . . through the imposition of a fee 120 days after enactment of this act and thereafter upon the application for and renewal of a license to act as a secondhand dealer or pawnbroker." (Stats. 2012, ch. 172, § 1, eff. Aug. 17, 2012, italics added.)  It further declared the goal of relieving these businesses from the costs associated with the paper transactions.  (*Ibid*.)  As amended, section 21628 now provides, "Every secondhand dealer . . . shall report daily, or on the first working day after receipt or purchase of secondhand tangible personal property, on forms or through an [e-filing] reporting system approved by the [DOJ] . . . ."[5]  The information to be reported remained unchanged.  Subdivision (j) now provides for the development of categories and "upon the availability of sufficient funds in the . . . Fund created pursuant to Section 21642.5 [enacting a $300 license fee for this purpose], the [DOJ] shall promptly develop a *single*, *statewide*, *uniform* [e-filing] reporting system to be used to transmit these secondhand dealer reports."  (§ 21628, subd. (j)(1), italics added.)  Until the e-filing system is operating, reports "may continue . . . in paper format on forms approved of or provided by the [DOJ]."  (*Id*., subd. (j)(2)(A).)  Upon the e-filing system becoming operative, all reports must be e-filed, except that during the first 30 days of the e-filing system's implementation there must also be a paper report as well.  (*Id*., subd. (j)(2)(B).)

The trial court's ruling focused on the voluntary nature of defendant County's e-filing system and the absence of any statewide system at that time (and presumably at the present time).  This misses the mark, however.

---

[5]  The term "secondhand dealer" in the statutory scheme includes those who "tak[e] in pawn" (e.g., pawnbrokers).  (See § 21626, subd. (a).)

Sacramento County Code section 4.30.025, subdivision (C) states, "Upon the implementation of an [e-filing] reporting system by the Sheriff, every pawnbroker[ and] secondhand dealer . . . may elect to commence reporting as required by this section by means of such [e-filing] reporting system in lieu of a paper form." It may be that a *cumulative* and voluntary e-filing system, organized in a way to best suit local needs, would not necessarily be "per se inconsistent" with the state law interest in a single uniform e-filing system. (*Malish*, *supra*, 84 Cal.App.4th at p. 730.) However, the ordinance purports to allow Sacramento businesses to opt to use its e-filing system *in lieu of* their obligation under state law to file paper reports until 30 days after the state e-filing system is operative. Section 21628 does not expressly allow for this local alternative to its express mandate. Contrary to the argument of defendants, subdivision (j)(2)(A)'s choice of phrase—that reports "*may* continue . . . in paper format" (italics added)— cannot be stretched into an endorsement of letting 58 voluntary e-filing systems bloom in California in lieu of the express requirement for paper reports.

Consequently, CLSDA had demonstrated that it is likely to prevail on this issue, and the trial court has already concluded that enforcement of the ordinance otherwise poses a threat of irreparable injury. Therefore, the preliminary injunction must also restrain defendants from giving effect to the provision allowing businesses to opt out of filing paper forms.[6]

---

[6] For the first time in its reply brief, CLSDA identifies two other statutes with which the ordinance purportedly conflicts, either by granting an exemption not reflected in state law (Sac. County Code, § 4.30.065, subd. (A)) or not including an exemption in section 21628.1. We will not entertain these arguments. (*Sourcecorp*, *Inc. v. Shill* (2012) 206 Cal.App.4th 1054, 1061, fn. 7.)

### III. Other Conflicting Provisions of the Ordinance

Although CLSDA expressly called the attention of the trial court to other provisions of the ordinance that it believed conflicted with state law, the trial court unaccountably did not address them in its ruling. Defendants also ignore them on appeal, focusing only on the e-filing provision. Whether or not this is a tacit concession of the invalidity of these other provisions, we agree that the preliminary injunction must extend to three of these as well.[7]

### A. *Transaction Fees*

Sacramento County Code section 4.30.090 provides for the Sheriff to collect a license fee from each of the pawnbrokers and secondhand dealers "to provide for the direct and indirect costs of processing reported data and enforcing the provisions of [chapter 4.30]." It authorizes the licensees, in turn, "to charge the amount of . . . ($1.00) per transaction . . . to defray the cost of said fee."

As CLSDA points out (without rejoinder from defendants), the Financial Code extensively prescribes the maximum compensation a pawnbroker can receive in interest: "no pawnbroker shall charge or receive compensation at a rate exceeding the sum of the following [rates]." (Fin. Code, § 21200, subd. (a).) "Compensation" is defined as "expenses, interest, disbursements, storage charges, and all other charges of any nature in connection with a loan or forbearance." (*Id*., § 21001.) Chapter 2 of the Financial Code also specifies the amount of a loan setup fee (Fin. Code, § 21200.1), creates a schedule of charges for loans (*id*., § 21200.5), and specifies the amount of charges for handling and

---

[7] Ordinarily, the trial court's failure to rule on the merits of these arguments would warrant remand, because it is the role of this court to *review* a trial court's exercise of its discretion, not to exercise discretion in the first instance. (*Right Site Coalition v. Los Angeles Unified School Dist.* (2008) 160 Cal.App.4th 336, 345 (*Right Site*).) We will nevertheless undertake " '*the unusual, but practical, step of reaching and resolving the merits*' " (*ibid*.) on these narrow questions of law.

11

storage based on the size of the pawned article (*id*., § 21200.6), processing firearms (*id*., § 21200.8), and lost pawn tickets (*id*., § 21201.1). Moreover, as noted above, the Legislature has now created a new license fee to fund the DOJ's e-filing system. Nothing in any of these provisions contemplates a *transaction* fee to pass through the cost of a local e-filing system to CLSDA customers. As CLSDA has established a likelihood of prevailing on this issue and is at risk of irreparable injury from its enforcement, the preliminary injunction must also restrain defendants from allowing the collection of a transaction fee as contained in Sacramento County Code section 4.30.090.

## B. Additional Reporting Requirements

In Sacramento County Code section 4.30.030, subdivisions (A) through (G), the ordinance prescribes the collection of the information specified under various state laws, including section 21628. However, as noted above, Sacramento County Code section 4.30.030, subdivision (H) adds *additional* reporting requirements.

As we have explained, to the extent the ordinance is duplicative of state law, it is not preempted. But under the authority of *Malish*, *supra*, 84 Cal.App.4th at pp. 735, 736, it cannot *add to* the reporting requirements of state law. Having demonstrated that it is likely to prevail on this issue (without rejoinder from defendants) and is at risk of irreparable injury from enforcement of the ordinance, CLSDA is entitled to have the preliminary injunction include a restraint on enforcing Sacramento County Code section 4.30.030, subdivision (H) as well.

## C. Holding Requirements

Sacramento County Code section 4.30.050, subdivisions (A) and (B) prescribe a seven-day holding period after acquisition of any undefined "article or thing" after filing a report on it except for "tangible personal property," which is subject to the same 30-day hold prescribed in section 21636 for tangible personal property. To the extent Sacramento County Code section 4.30.050, subdivision (A) applies to items that are not

12

tangible personal property,[8] it does not conflict with the purposes of section 21636. Similarly, to the extent section 4.30.050, subdivision (B) duplicates section 21636, it does not conflict. CLSDA has thus failed to demonstrate that it is likely to prevail on this issue.

### D. Pawnbroker Definition

Sacramento County Code section 4.30.015, subdivision (D) defines a "pawnbroker" as "a person engaged in . . . the business of lending money . . . upon personal property, pawns or pledges; *or the business of purchasing articles from the vendors or their assignees at prices agreed upon at or before the time of such purchase*." (Italics added.) CLSDA purports a lack of understanding of the meaning of the emphasized portion, but asserts (without rejoinder from defendants) that whatever meaning is intended in this definition, it cannot depart from either Business and Professions Code section 21626, subdivision (a) (which specifies that "secondhand dealers" subject to the reporting requirement include business that involves "buying, selling, trading, taking in pawn, accepting for sale on consignment, accepting for auctioning, or auctioning secondhand tangible personal property," but not coin or firearm dealers (Bus. & Prof. Code, § 21626, subd. (b)) or Financial Code section 21000, which defines a "pawnbroker" as "[e]very person engaged in the business of receiving goods . . . in pledge as security for a loan" for purposes of compensation and other regulations in division 8 of that code.

We agree that for purposes of identification, holding, and reporting requirements, the reach of the ordinance must be coextensive with state law and cannot expand or contract its scope, and therefore CLSDA is likely to prevail on the issue of the altered

---

**8** "Tangible personal property" is defined in Sacramento County Code section 4.30.015, subdivision (G). An example of items that are not considered tangible personal property—provided by respondents' counsel at oral argument—was shoes and purses.

definition of "pawnbroker" in Sacramento County Code section 4.30.015, subdivision (D). Although CLSDA has failed to make any showing that any of its members in Sacramento County would not otherwise be subject to the reporting requirements, this lack of harm is not fatal to relief. (*Right Site*, *supra*, 160 Cal.App.4th at p. 342.) We will therefore modify the preliminary injunction in this respect as well.

## IV. The Issue of Severing the Ordinance Is Premature

In a one-paragraph argument, CLSDA contends "the remaining valid provisions of the ordinance cannot be saved because they cannot be considered volitionally severable." It asserts it may raise this issue for the first time on appeal because it presents a pure question of law and "there is no reason to burden the parties with unnecessary proceedings below."

Defendants are correct that this argument is premature. Absent a stipulation or other satisfactory showing that the parties submitted the cause on the merits, the final judgment on the merits has yet to be entered on the ordinance; all that the trial court issued was a *provisional* remedy. (*Camp v. Board of Supervisors* (1981) 123 Cal.App.3d 334, 357-358; *Gray v. Bybee* (1943) 60 Cal.App.2d 564, 571.) Thus, further proceedings in the trial court are not "unnecessary"; in fact, that court is still vested with jurisdiction over the merits of the matter. (*Gray*, at p. 571; see *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 191 [neither affirmance nor reversal of preliminary injunction order eliminates need for additional proceedings on the merits].) The question of severability (or indeed, whether defendants even wish to continue to enforce the ordinance in light of Assembly Bill No. 391's amendments) can be addressed in the trial court in the process of obtaining a declaration of invalidity in the final judgment in this matter.

14

## DISPOSITION

The trial court's order granting a preliminary injunction against enforcement of the ordinance is modified to include the subjects discussed in this opinion:  Defendants cannot excuse e-filers from filing paper reports (Sac. County Code, § 4.30.025, subd. (C)); defendants cannot authorize the collection of a transaction fee (Sac. County Code, § 4.30.090); defendants cannot mandate the collection of reporting information not specified in section 21628 (Sac. County Code, § 4.30.030, subd. (H)); and defendants cannot expand or contract the definition of pawnbrokers subject to the ordinance in deviation from state law (Sac. County Code, § 4.30.015, subd. (D)).  As thus modified, the order is affirmed.  CLSDA shall recover its costs of appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


                                     BUTZ                 , J.


We concur:


      NICHOLSON      , Acting P. J.


      HULL               , J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| COLLATERAL LOAN AND SECONDHAND DEALERS ASSOCIATION,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>COUNTY OF SACRAMENTO et al.,<br><br>Defendants and Respondents. | C070987<br><br>(Super. Ct. No. 34-2012-00118609-CU-JR-GDS)<br><br>ORDER MODIFYING OPINION<br><br>AND CERTIFYING OPINION FOR<br><br>PUBLICATION<br><br>[NO CHANGE IN JUDGMENT] |

APPEAL from a judgment of the Superior Court of Sacramento County, David I. Brown, Judge.  Affirmed as modified.

Law Offices of Jon P. Webster, Jon P. Webster, James A. Arcellana and Raymond M. Yetka for Plaintiff and Appellant.

John F. Whisenhunt, County Counsel, and John Reed, Deputy County Counsel, for Defendants and Respondents.

THE COURT:

It is ordered that the opinion filed herein on January 9, 2014, be modified as follows:

1. On page 6, at the third line, delete the remainder of the sentence after the words "and (4)" and insert the following so it now reads:

> and (4) the addition in Sacramento County Code section 4.30.015, subdivision (D)'s definition of "pawnbroker" to the definition under state law in an unclear manner.

2. On page 6, in the fifth line of part I. of the Discussion, delete the following quotation and citation following the *Efstratis* citation:

> "However, where the superior court (as here) limits its ruling to only one of these factors, it is that ground which must conclusively support the order." (*Ibid.*)

3. On page 8, in the first full paragraph of part II. delete the second half of the paragraph beginning on the fifth line with the words "In subdivisions (a) to (g)," and ending with "(§ 21628, subd. (j)(2), (1).)" and replace it with the following:

> In former subdivisions (a) to (g), the statute then prescribed the contents of the reports. In former subdivision (j)(1) and (2), the statute first directed the DOJ to develop categories of tangible personal property to be incorporated into the reports, and to develop a format for e-filing; it then provided, "Twelve months after the [e-filing] format and the categories . . . have been developed, each secondhand dealer . . . shall [e-file] using this format the information required by this section . . . . Until that time, each

17

secondhand dealer . . . may either continue to report this information using existing forms and procedures or may begin [e-filing] . . . as soon as [the categories and format have] been developed."

4.      On page 9, in footnote 5, delete the words "(e.g., pawnbrokers)." and replace them with "(i.e., pawnbrokers)."

5.      On page 11, at the third line of the first full paragraph of part III., delete the word "unaccountably" so that the phrase now reads:  "the trial court did not address them in its ruling."

There is no change in judgment.

The opinion in the above-entitled matter filed on January 9, 2014, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.   (**CERTIFIED FOR PUBLICATION**)

BY THE COURT:


        NICHOLSON        , Acting P. J.


        HULL             , J.


        BUTZ             , J.


18