Filed 8/19/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CITY OF PASADENA et al., | C073654 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2012-00134585-CU-MC-GDS) |
| v. | |
| MICHAEL COHEN, as Director, etc., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Shelleyanne W. L. Chang, Judge.  The order granting a preliminary injunction is vacated, and the matter is remanded with directions.

Kamala D. Harris, Attorney General, Douglas J. Woods, Assistant Attorney General, Marc A. LeForestier, Stephanie F. Zook and Seth E. Goldstein, Deputy Attorneys General, for Defendant and Appellant.

Kane, Ballmer & Berkman, Murray O. Kane, Guillermo A. Frias; and R. Bruce Tepper for Plaintiffs and Respondents.

Given the dire condition of state finances, in the summer of 2011 the Legislature enacted legislation (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 5X (hereafter chapter 5X)), primarily within the Health and Safety Code,[1] that barred any new redevelopment agency

---

[1] Undesignated statutory references are to the Health and Safety Code.

obligations, and established procedures for the windup and dissolution of the obligations of the nearly 400 redevelopment agencies then existing. (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 241, 246, 250-251, 253 (*Matosantos*).)[2] This case stems from a dispute arising out of a process we might call the "Great Dissolution."

Defendant Department of Finance (the Department) disapproved two items included in the "Recognized Obligation Payment Schedule" (ROPS)[3] of plaintiff City of Pasadena (the City).[4] The City acts as "successor agency" to the Pasadena Community Development Commission[5] (§§ 34171, subd. (j), 34173), determining that these were not enforceable obligations of the Pasadena redevelopment agency. Both obligations expire in 2014; the first apparently involved reimbursement for pension bonds and the other for

---

[2] Those interested in the history of redevelopment, the manner in which property tax revenues have become a zero-sum game for local agencies, the impact redevelopment has had on this zero-sum game and the evolving state obligation for school funding, and the resulting legislative determination during a period of financial straits to abolish redevelopment agencies may read Justice Werdegar's excellent exegesis in *Matosantos*, which upheld chapter 5X in the face of challenges from the arrayed forces of those who had benefitted under the status quo. (*Matosantos*, *supra*, 53 Cal.4th at pp. 242-252.)

[3] This is "the document setting forth the minimum payment amounts and due dates of payments required by enforceable obligations" of the former redevelopment agencies. (§§ 34171, subds. (h) & (d) [defining "enforceable obligations"], 34179, subd. (h) [vesting the Department with power to disapprove inclusion of items in a ROPS].) The ROPS at issue involves enforceable obligations due in the period of January to June 2013 (payable on Jan. 2, 2013), which the City refers to as "ROPS III."

[4] There are two other nominal individual plaintiffs asserting their interests as third party beneficiaries of agreements between the City and its former redevelopment agency. As best we can tell, although counsel for the City asserted at oral argument that the individuals are actively appearing on appeal, the individual plaintiffs have not submitted any independent briefing, and the City has not suggested any manner in which our resolution of the Department's standing on appeal or the propriety of declaratory relief requires different treatment of the individual plaintiffs on these two issues. We thus refer only to the City as plaintiff.

[5] This is the City's now defunct redevelopment agency (hereafter Pasadena redevelopment agency).

subsidized housing bonds, both pursuant to a 1987 legislative imprimatur well antedating the Great Dissolution.  (§ 33608.)  The Department previously had approved these two items in ROPS I and II.

The City filed the present action, seeking injunctive and declaratory relief against defendant Ana Matosantos in her official capacity as director of the Department.[6]  The trial court granted the City's application for a preliminary injunction, finding that the City had some likelihood of prevailing on the merits, and had a significant risk of irreparable harm otherwise.  The trial court ordered defendant Auditor-Controller of Los Angeles County (L.A. Auditor-Controller) to sequester the funds for the two disapproved obligations pending a trial on the merits, and to refrain from distributing them to the taxing entities that are otherwise entitled to the remainder of the property tax proceeds payable to the successor agency.  (§§ 34171, subd. (k) [defining " '[t]axing entities' "], 34182, subd. (c) ["county auditor-controller[s]" are administrators of trust funds for property taxes formerly payable to redevelopment agencies] & 34183, subd. (a) [establishing entitlement of taxing entities to remainder of distribution of property taxes after payment of enforceable obligations].)  Defendant Matosantos alone filed the March 2013 notice of appeal.[7]

In something of an afterthought, the Department makes what should be a threshold claim that the City was required to seek relief in traditional mandate from the Department's ruling that the two ROPS payments were not enforceable obligations,

---

[6] Defendant Michael Cohen is the Department's present director, whom we substitute in the caption.

[7] In May 2013, the parties stipulated to entry of a similar preliminary injunction in connection with the City's ROPS IV, governing enforceable obligations due between June and December 2013.  (*Collateral Loan & Secondhand Dealers Assn. v. County of Sacramento* (2014) 223 Cal.App.4th 1032, 1044 (*Collateral Loan*) [trial court retains jurisdiction while appeal of preliminary injunction pending].)

3

rather than in an action for declaratory relief. On the merits, the Department argues that the City in fact does not have *any* likelihood of prevailing under a proper interpretation of the pertinent statutes involved. The Department additionally argues the trial court incorrectly found that there was a risk of irreparable harm to the City. In our preliminary review of this case, we had questions about whether the Department had standing to appeal the ruling, and solicited supplementary briefing on the issue.

On plenary review, we conclude that regardless of the Department's standing to pursue this appeal, the interests of judicial economy would require us in any event to determine if the trial court should have ruled that it was incorrect to yoke *declaratory* and injunctive relief together. We shall vacate the order with directions either to dismiss the action (with or without leave to amend) or to construe the City's pleading as one for traditional mandate and proceed accordingly.

Given the disposition of this appeal, there are only a limited number of relevant background facts beyond those stated in the introduction. We will incorporate them in the Discussion rather than set them out separately.

## DISCUSSION

### I. Standing

In its initial application for a temporary restraining order and an order to show cause on a preliminary injunction, the City sought only to restrain the L.A. Auditor-Controller from distributing the funds to the taxing entities that were the subject of the Department's administrative disallowance of the two obligations in the ROPS III. The trial court's ensuing order directed the L.A. Auditor-Controller to sequester the funds, and prohibited either defendant "from taking any action regarding ROPS III Items 1 and 14."

4

In its order granting the preliminary injunction that is the subject of this appeal, the trial court directed *only* that defendants refrain from making any disbursement of the sequestered ROPS III funds. This order did not in any respect rule on the merits of the Department's disallowance or direct the Department to take any action with respect to its administrative determination; indeed, the trial court noted "it remains entirely possible defendants could ultimately prevail in this action," but the City had presented three arguable grounds for judgment in its favor and, unlike the Department, was at risk of significant and irreparable injury.

Thus, while the Department is nominally subject to the preliminary injunction, it has not been ordered to take any action with respect to its administrative disallowance of the inclusion of the two items in ROPS III, which is still in effect. The Department does not play any role in the administration of the property tax trust fund; as noted, this is the responsibility solely of the L.A. Auditor-Controller, who administers it on behalf of both the holders of enforceable obligations and the taxing authorities. (§ 34182, subd. (c).)

In response to our query regarding its standing to appeal in these circumstances, the Department attempts to demonstrate that it is aggrieved from the sequestration itself. First, it emphasizes the financial burden the State of California is incurring ($15 million through February 2014) to provide substitute funds to the local school districts that would otherwise be recipients of the sequestered funds, and the Department's general authority "over all matters concerning the financial . . . policies of the State," which includes the power to "institute . . . such . . . proceedings as it deems proper to conserve the rights and interests of the State." (Gov. Code, §13070.) The Department then points out that the trial court recognized the Department as the proper representative to litigate this matter on behalf of the recipient taxing entities.[8] Finally, the Department argues that it has

---

[8] To be more exact, the trial court found that the Department's evaluation of whether a payment was an enforceable obligation was not a determination that had "heretofore

5

express standing "to file a judicial action to prevent a violation" of chapter 5X. (§ 34177, subd. (a)(2).)

General standing to litigate as a party is distinct from the question of whether a particular ruling aggrieves a party and confers standing to appeal. (*Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 67-68; cf. *People ex rel. Dept. of Conservation v. El Dorado County* (2005) 36 Cal.4th 971, 988 [distinction between general right to litigate and standing to seek writ of mandate].) We are hard-pressed to find that the interlocutory sequestration of state funds would ultimately aggrieve the Department if judgment were in its favor (especially given its past approval of payments for these obligations). On the other hand, as the L.A. Auditor-Controller is a disinterested holder of funds, we would be left with a ruling without any other party having sufficient motivation to appeal.

This conundrum stems from the improper procedural vehicle in which this appeal has reached us. The merits of the Department's administrative determination have not yet been the subject of judicial review, while in the meantime the preliminary injunction to preserve the status quo lies against a different party that has control over the corpus.

It would serve little purpose to conclude that the Department lacked standing and dismiss the appeal, because the parties could then obtain a final judgment that includes a declaration on the merits of the administrative disallowance, and the Department could then promptly return to this court and again claim that declaratory relief is unavailable. Therefore, in the interests of judicial economy, we will simply assume the Department is a species of real party in interest with standing to appeal. Even if this proves to be an incorrect assumption and we are in fact without jurisdiction to consider the appeal, our

proceeded" with the involvement of the taxing entities; to the extent taxing entities even had any interest in the litigation as a result, the Attorney General would adequately protect it.

analysis of the merits is offered as guidance in the ongoing proceedings in the trial court (see fn. 7, *ante*).

## II. Declaratory Relief Is Not Available

"It is settled that an action for declaratory relief is not appropriate to review an administrative decision." (*State of California v. Superior Court* (1974) 12 Cal.3d 237, 249; accord, *Tejon Real Estate, LLC v. City of Los Angeles* (2014) 223 Cal.App.4th 149, 154-155 [declaratory relief proper only to declare statute unconstitutional on face, and not as applied to plaintiff by an administrative agency].)  Declaratory relief also cannot be joined with a writ of mandate reviewing an administrative determination.  (*Guilbert v. Regents of University of California* (1979) 93 Cal.App.3d 233, 244.)[9]  It is therefore not material, as the City argues, that declaratory relief is *otherwise* available generally as a vehicle for interpreting statutes.  The City admits in its brief that the "many" *other* Great Dissolution cases "presently pending at the superior court level are traditional writ of mandate cases."

The trial court did not address this body of case law.  It focused only on the lack of any express requirement under chapter 5X to seek relief in mandate.  This absence of an express requirement, however, does not have any significance in light of the generally available remedy of traditional mandate and the generally applicable prohibition against declaratory "review" of agency actions.

---

[9]  At oral argument, counsel for the City insisted that the City's complaint had a petition for traditional mandamus "embedded" in it.  We do not find any such indication in the complaint and prayer for relief and, indeed, the City has not previously made such a claim in opposition to the Department's insistence (beginning with its opposition to the City's application for a temporary restraining order) that traditional mandamus is the only proper way to review its administrative determination.  However, in light of the black letter prohibition stated in the text against conjoining declaratory relief with a writ proceeding, this misreading of the pleading made in too tardy a fashion is immaterial.

The trial court therefore should not have granted a preliminary injunction pending a ruling on the merits of a claim for *declaratory* relief to which the City was not entitled as a matter of law.  Instead, it should have taken one of two courses.  Either it could have simply denied injunctive relief and dismissed the action on this ground (with or without leave to amend), or it could have construed the City's pleading as one seeking traditional mandate and (if it has adequately stated the City's entitlement to such relief) ruled on the *merits* of the challenge to the administrative determination (*Hostetter v. Alderson* (1952) 38 Cal.2d 499, 500; *Boren v. State Personnel Bd.* (1951) 37 Cal.2d 634, 637-638), and issued the writ or denied the petition.

We are presented with an appeal in which the trial court has never ruled whether dismissal of the proceeding was appropriate, or whether *it* should consider the adequacy of the pleadings to establish entitlement to a writ of mandate (cf. *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 187, 192-193 [noting trial court has broader discretion than appellate court to treat one type of motion as another]), and in which the Department chose to appeal an interlocutory ruling without giving the trial court the opportunity to rule in the first instance on the merits of the City's arguments (beyond finding them colorable).[10]  We will not make our appearance as dei ex machina in the final act and set everything aright de novo (to the extent that is even possible).  We shall therefore vacate the order and remand for the trial court to make these determinations.

## DISPOSITION

The order granting a preliminary injunction is vacated, and the matter is remanded to the trial court with directions either to dismiss the proceeding (with or without leave to

---

**10**  Ordinarily, it is for the trial court to rule in the first instance on the ultimate merits of the dispute at issue in a prayer for injunctive relief and not this court on appeal from a request for a preliminary injunction.  (*Collateral Loan*, *supra*, 223 Cal.App.4th at pp. 1041, fn. 7, 1044.)

amend) or construe it as one for traditional mandate and proceed accordingly.  Neither party shall recover costs of appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


                                                                                  BUTZ_____, J.


We concur:


_____NICHOLSON_____, Acting P. J.


_____HULL_____, J.